**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JOHNATHAN YASEVICH,** *et al.*                                                                                          **PLAINTIFFS**

**v.**                                               **Case No. 3:20-cv-00019-KGB**

**HERITAGE COMPANY, INC.,** *et al.*                                                                            **DEFENDANTS**

**ORDER**

Before the Court are the motion to enforce settlement filed by plaintiff Johnathan Yasevich, individually and on behalf of all others similarly situated who have opted into this collective action and are now named plaintiffs (collectively "plaintiffs") (Dkt. No. 43) and defendants Heritage Company, Inc. and Sandra Franecke's (collectively "Heritage") motion to strike certain plaintiffs' filings (Dkt. No. 49). In the Court's determination, the resolution of these motions turns on whether the parties reached an agreed upon settlement and whether any agreement, and the negotiations leading up to a settlement agreement, must remain confidential. The Court addresses these issues below, denying both plaintiffs' motion to enforce settlement and Heritage's motion to strike certain plaintiffs' filings (Dkt. Nos. 43; 49). However, pursuant to Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 5.2(d), the Court directs the Clerk of Court to place under seal Docket Numbers 43, 44, 44–1, 44–2, 44–3, 44–4, and 44–5.

**I.     Factual Background**

Plaintiffs filed a complaint against Heritage on January 22, 2022, seeking declaratory judgment, monetary damages, liquidated damages, prejudgment interest, costs, and reasonable attorney's fees for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* ("AMWA"), and alleged violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §

2101, *et seq.* ("WARN Act") (Dkt. Nos. 1, at 1; 5, at 3).  After months of discovery, the parties engaged in mediation on September 13, 2021, and informed the Court on September 16, 2021, that they had reached a settlement in principle on all claims (Dkt. No. 28).  The September 16, 2021, notice of settlement also indicated that the parties were "in the process of finalizing settlement terms and . . . anticipate[d] filing a Joint Stipulation of Dismissal with Prejudice within 60 days of the filing of [the] Joint Status Report and Notice of Settlement" (*Id.*).  Throughout the course of discovery and settlement negotiations, plaintiffs determined that they did not have any actionable claims against Heritage under the WARN Act (Dkt. No. 29, at 2).  Plaintiffs filed a joint stipulation of partial dismissal without prejudice on October 18, 2021, requesting the Court dismiss plaintiffs who only brought claims under the WARN Act (*Id.*).  On November 10, 2021, the Court removed the case from the trial calendar, granted the requests to stay discovery deadlines, and dismissed the WARN Act claims (Dkt. No. 30).

The parties filed separately several status reports between November 15, 2021, and January 28, 2022.  Plaintiffs represented in their filings that they had reached a finalized settlement with Heritage (Dkt. Nos. 31; 33; 35; 41).  Heritage disagreed, arguing that plaintiffs had disclosed confidential information, and Heritage requested that this matter be rescheduled for trial (Dkt. Nos. 32; 34). On February 22, 2022, the Court ordered the parties to provide another status update (Dkt. No. 22).  Plaintiffs responded by filing a motion to enforce settlement (Dkt. No. 43), and Heritage provided a status update explaining that a finalized settlement had not been reached (Dkt. No. 45).  Heritage then requested to file several documents under seal, and, on March 14, 2022, Heritage moved to strike certain filings made by plaintiffs in their February 28, 2022, filings (Dkt. Nos. 46; 49).  The Court granted Heritage's request to file several documents under seal on August 29, 2022

(Dkt. Nos. 46; 56). The Court now addresses Heritage's motion to strike certain plaintiffs' filings and plaintiffs' motion to enforce settlement (Dkt. Nos. 43; 49).

## II.   Motion To Strike Certain Plaintiffs' Filings

### A.   The Parties' Arguments

Heritage's March 14, 2022, motion requests that the "Court formally strike [two docket entries and their exhibits] . . . from the record, ensure that these documents are removed from the Court's electronic filing system, require the docket entry be updated to reflect this Court's decision to order the removal of these filings from the PACER system, and order Plaintiffs to file the original documents under seal" (Dkt. No. 49, ¶¶ 1, 4; *see also* Dkt. Nos. 43; 44; 44-1; 44-2; 44-3; 44-4; 44-5). Specifically, Heritage requests that the motion to enforce settlement, its brief in support, and all exhibits attached to that brief in support be struck from the record and refiled under seal (Dkt. No. 49, ¶¶ 1, 4; *see also* Dkt. Nos. 43; 44; 44-1; 44-2; 44-3; 44-4; 44-5). Heritage argues that, by failing to file these documents under seal, plaintiffs have violated the Mediation Confidentiality Agreement ("Mediation Agreement") (Dkt. No. 50-1) and Arkansas Code § 16-7-206 (Dkt. No. 50, ¶ 2).

Plaintiffs respond to Heritage's motion by arguing that Heritage cites no "legitimate concern about Plaintiffs' filed documents that can come close to override the public's interest . . . in public access [to the documents at issue]" (Dkt. No. 52, at 1). Plaintiffs maintain that FLSA claims are presumed to be matters of public record, and, according to plaintiffs, Heritage has not demonstrated "sufficient grounds" for the Court to exercise its discretion to override the presumption of "public access to judicial documents" (*Id.* (internal citation omitted)). Plaintiffs further counter by arguing that the Mediation Agreement and Arkansas statute apply only to mediation proceedings, not what happens outside mediation (*Id.*, at 1). Heritage replies to

plaintiffs' response, stating that it merely wants these records sealed and out of public review pursuant to Federal Rule of Civil Procedure 5.2(d) (Dkt. No. 55, at 1–2).

### B. Legal Standard

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597(1978)). "The Court in *Nixon* explained that 'the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents,' but that 'the right to inspect and copy judicial records is not absolute.'" *eBay*, 709 F.3d at 1222 (quoting *Nixon*, 435 U.S. at 597–98). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and 'to keep a watchful eye on the workings of public agencies.'" *eBay*, 709 F.3d at 1222 (citing *Nixon,* 435 U.S. at 598; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 161 (3d Cir.1993)). "It also provides a measure of accountability to the public at large, which pays for the courts." *eBay*, 709 F.3d at 1222 (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir.1999)).

This common-law right to access extends to civil matters. However, a court may seal records when "sufficient grounds [exist] to override the common-law right of access." *eBay*, 709 F.3d at 1222–23 (citing *Webster Groves School District v. Pulitzer Publishing Co.*, 898 F.2d 1371, 1376–77 (8th Cir. 1990)). "Modern cases on the common-law right of access say that '[t]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts.'" *eBay*, 709 F.3d at 122 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (explaining that, before the common law right to open judicial record

4

attaches, "a court must first conclude that the documents at issue are indeed 'judicial documents,'" which are documents relevant to the performance of the judicial function and useful in the judicial process, and that, if documents are judicial documents to which a common law presumption of access attaches, the court must determine the weight of that presumption); *United States v. Amodeo*, 71 F.3d 1044, 1048–49 (2d Cir. 1995) (explaining that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information . . . .  We believe that the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.  Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.)).

In the context of settlement, most agreements are not part of the court record and not subject to the common law right of access, as these agreements are "private contract[s] . . . ." *Hart v. ITC Serv. Grp., Inc.*, Case No. 4:15-CV-00599-DGK, 2017 WL 2728439, at *1 (W.D. Mo. June 23, 2017) (citing *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003)).  However, in lawsuits alleging an FLSA violation, "settlement must be approved by the court, and once approved it becomes part of the judicial record and is presumptively open to the public." *Hart*, 2017 WL 2728439, at *1 (citing *Jessup v. Luther*, 277 F.3d 926, 928–30 (7th Cir. 2002) (noting in an non-FLSA context that when a judge provides "input" on a settlement agreement, the agreement presumably becomes part of the public record); *In re Sepracor Inc. FLSA Litigation*, MDL No. 2039–DGC, 2009 WL 3253947, at *1–2 (D. Ariz. Oct. 8, 2009) (unsealing an FLSA settlement agreement and noting the strong presumption for keeping FLSA settlement agreements

unsealed and available for public view); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (explaining that the presumption for open records is "strongest" in an "FLSA wage-settlement agreement")). Only a compelling need to keep a record private can "justify non-disclosure of judicial records." *See generally In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (explaining the presumption of access to judicial records in a bankruptcy context).

Courts have found a compelling need to keep judicial records private when potentially unsealing a given record compromises personal safety, reveals trade secrets, or identifies a minor. *See e.g. eBay*, 709 F.3d at 1223–24 (finding a company's "confidential and competitively sensitive information" warranted sealing the complaint); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (granting an appellant's request to file under seal an appendix to the appellate record that contained personal information about a minor); *Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (recognizing the protection of a confidential informant as a compelling government interest justifying the reception of evidence under seal). A court, however, will not seal documents that were integral to its approval of a settlement simply because the parties agreed to keep the material terms confidential. *Hart*, 2017 WL 2728439 at *1 (citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 834–35 (7th Cir. 2013) (Posner, J., in chambers)). Ultimately, in determining whether to seal documents, the court must balance "the interests served by the common-law right of access . . . against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *eBay*, 709 F.3d at 1223.

### C. Analysis

The Court begins its analysis by noting again that most settlement agreements are not subject to the common law open records presumption. *Hart*, 2017 WL 2728439, at *1 (citing *Stalnaker*, 293 F. Supp. 2d at 1263). However, this case involves claims brought under the FLSA.

As such, any "settlement must be approved by the court, and once approved it becomes part of the judicial record and is presumptively open to the public." *Hart*, 2017 WL 2728439, at *1 (citing *Jessup*, 277 F.3d at 928–30; *In re Sepracor Inc. FLSA Litigation*, 2009 WL 3253947, at *1–2; *Stalnaker*, 293 F. Supp. 2d at 1263). Thus, in the context of the instant suit, a presumption of openness exists as to settlement agreements that must be approved by the Court.

To the extent Heritage's request that the Court strike some of the plaintiffs' filings and order plaintiffs to refile those documents under seal hinges on the Court accepting Heritage's rationale that the filings at issue are subject to confidentiality provisions of the Mediation Agreement signed by the parties and Arkansas law found at Arkansas Code § 16-7-206, the Court denies Heritage's request for the reasons explained in this Order (Dkt. No. 50, at 2–4). Plaintiffs maintain that the documents and communications Heritage seeks to seal were not part of the mediation proceedings and are not subject to the Mediation Agreement or Arkansas Code § 16-7-206.

The Mediation Agreement provides that "all communications, records, allegations, and admissions revealed during the course of mediation shall remain confidential" (Dkt. No. 50-1, at 2). It further provides that Arkansas Code § 16-7-206's provisions regarding confidentiality "shall apply to this mediation" (*Id.*). The Court could find no occasion where the Arkansas Supreme Court determined that Arkansas Code § 16-7-206 applies to documents or discussions arising subsequent to a settlement mediation, like the documents and exchanges at issue here. However, the Arkansas Court of Appeals for Divisions II & III in *Wynne-Arkansas, Inc. v. Richard Baughn Construction*, 597 S.W.3d 114, 118 (Ark. Ct. App. 2020), did deal with this question when faced with a case related to the discoverability of a confidentiality agreement. The *Wynne-Arkansas* court determined that a confidential settlement agreement resulting from

mediation was subject to the confidentiality provisions found at Arkansas Code § 16-7-206. *Id.* The court explained:

> Whether confidential agreements arising from mediation should be discoverable by outside parties is an issue of both first impression and substantial public interest. [One party] contends that subsection (b) of [§ 16-7-206] setting forth that "[a]ny record or writing made at a dispute resolution process is confidential" furthers the goal of promoting the use of mediation and other alternative dispute resolutions. Though Arkansas has not directly dealt with this issue, we agree. . . that *protecting the confidentiality of agreements supports and encourages the dispute-resolution process*.

597 S.W.3d at 118 (emphasis added).

The *Wynne-Arkansas* decision, though informative, does not determine this Court's disposition of the instant motion to strike for several reasons. First, this is an FLSA action where a strong presumption in favor of open judicial records exists so as to serve the FLSA's underlying purpose of protecting worker's rights. *See generally Hart*, 2017 WL 2728439 at *1; *In re Sepracor Inc. FLSA Litigation*, 2009 WL 3253947 at *1–2; *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d at 1263. Second, Heritage has not demonstrated that this is a case involving the negotiation of a settlement that compromises personal safety, reveals trade secrets, or identifies a minor. *See generally eBay*, 709 F.3d at 1223–24; *Eugene S.*, 663 F.3d at 1135; *Goff*, 362 F.3d at 550. Third, Arkansas Code § 16-7-206(c) provides a carve out whereby a court may allow the disclosure of protected information in certain situations. The Court, when weighing all of these factors, rejects Heritage's rationale that the filings at issue are subject to confidentiality provisions of the Mediation Agreement signed by the parties and Arkansas law found at Arkansas Code § 16-7-206.[1]

---

[1] The Court does not understand Heritage to seek for this Court to enforce the terms of the Mediation Agreement as to confidentiality of the mediation process on the limited record before it. If Heritage seeks to pursue that, it should file a separate motion. Further, having reviewed all filings and the record before it, the Court wishes to clarify for the parties that confidentiality in the

However, for reasons this Court explains, the Court determines that plaintiffs' filing relates to settlement discussions, not a final FLSA settlement agreement reached by the parties and submitted to the Court for final approval. The filings were necessary for the Court to resolve the parties' dispute, so the Court will not strike the filings from the record. However, pursuant to Federal Rule of Evidence 408, evidence of compromise offers and negotiations are generally not admissible. This Court anticipates that this matter will be reset for trial. As a result, pursuant to Federal Rule of Civil Procedure 5.2(d), the Court directs the Clerk of Court to place under seal Docket Numbers 43, 44, 44–1, 44–2, 44–3, 44–4, and 44–5.

To the extent plaintiffs wish to do so, plaintiffs may propose redacted versions of these documents to the Court for the Court's consideration and potential public filing. If plaintiffs opt to propose redacted versions of these documents, plaintiffs must provide a copy of their proposed redacted versions to Heritage for review of and objection to the proposed redactions prior to submitting to the Court.

For the foregoing reasons, the Court denies Heritage's motion to strike certain plaintiffs' filings (Dkt. No. 49). However, pursuant to Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 5.2(d), the Court directs the Clerk of Court to place under seal Docket Numbers 43, 44, 44–1, 44–2, 44–3, 44–4, and 44–5. Plaintiffs may, if they choose to do so, propose redacted versions of under seal Docket Numbers 43, 44, 44–1, 44–2, 44–3, 44–4, and 44–5 for the Court's consideration consistent with the terms of this Order.

---

mediation process and confidential terms of a settlement typically are distinct issues, with unique laws and policies governing each depending on the nature of the proceedings, the forum of the proceedings, and the claims involved.

9

### III. Settlement Agreement

Plaintiffs believe this case to be "over" and accuse Heritage of "refusing to honor the parties['] agreement" (Dkt. No. 44, at 1). They ask this Court to order Heritage to "carry out their obligations under the settlement contract and dismiss this case," while retaining jurisdiction to "make sure the settlement goes through as contemplated in the agreement" (*Id.*). Heritage disagrees, claiming that the parties "have not reached a settlement on final terms that has been signed by all Parties" (Dkt. No. 48, at 1). Heritage argues that, though the parties did exchange drafts of a formal written agreement, "no agreement was ever made as to a finalized version," citing plaintiffs' terms and actions as reasons why a finalized settlement does not exist (*Id.*).

#### A. Jurisdiction To Enforce Settlement

As a general matter, district courts do not have the have inherent power, that is, automatic ancillary jurisdiction, to enforce an agreement settling federal litigation. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994); *Miener By & Through Miener v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995) (citing *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 195 (8th Cir. 1995)). Ancillary jurisdiction to enforce a settlement agreement exists only "if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal—either by . . . a provision 'retaining jurisdiction' over the settlement agreement [ ] or by incorporat[ion of] the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 380–81. Ancillary jurisdiction to enforce the agreement exists in these situations because breach of the agreement violates the district court's judgment. *Id.* Absent action making the settlement agreement part of a dismissal order, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.*

10

Here, plaintiffs ask this Court to enforce an agreement that they believe settles the instant case (Dkt. No. 44).  Plaintiffs cite *Szanto v. Bistritz*, 743 F. App'x 940, 942 (11th Cir. 2018), for the proposition that this Court can enforce a settlement agreement when that agreement deals with a case still pending before a court.  Several other circuits have held that the distinction between a dismissed case and a case currently pending defines whether a district court can maintain jurisdiction.  *See generally Serta Simmons Bedding, LLC v. Casper Sleep Inc.*, 950 F.3d 849, 855 (Fed. Cir. 2020) (collecting cases and holding that "under Federal Circuit law a district court has jurisdiction to enforce a settlement agreement that resolves patent infringement claims if the motion to enforce is filed before the case is dismissed and the proceedings are ongoing."); *Szanto v. Bistritz*, 743 F. App'x 940, 942 (11th Cir. 2018) (quoting *Kent v. Baker*, 815 F.2d 1395, 1396 (11th Cir. 1987), for the proposition that "[a] district court retains 'jurisdiction to enforce a settlement agreement when . . . a party claims a breach of the settlement agreement before the court has dismissed the action.'"); *Roman-Oliveras v. Puerto Rico Elec. Power Auth. (PREPA)*, 797 F.3d 83, 86–87 (1st Cir. 2015) (explaining that "*Kokkonen* does not block a district court from enforcing a settlement agreement before the underlying suit has been dismissed."); *Bryan v. Erie Cnty. Off. of Child. & Youth*, 752 F.3d 316, 322 (3d Cir. 2014) (noting that where there is no dismissal, jurisdiction to enforce a settlement agreement exists because claims are still pending before the court); *BCM Dev., LLC v. Oprandy*, 490 F. App'x. 409, 409 (2d Cir. 2013) (unpublished) (reaffirming its pre-*Kokkonen*, decision *Meetings & Expositions Inc. v. Tandy Corp.,* 490 F.2d 714, 717 (2d Cir. 1974), where it ruled that "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."); *T St. Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 10 (D.C. Cir. 2009) (noting that the D.C. Circuit has "consistently held that nothing in *Kokkonen* precludes district courts from enforcing

11

settlements that occur during litigation"); *Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (stating that enforcing a settlement agreement "may be accomplished within the context of the underlying litigation without the need for a new complaint."); *see also Smith v. Unum Life Ins. Co. of Am.*, Case No. 19-CV-1659 (MJD/LIB), 2020 WL 1172028, at *3 (D. Minn. Feb. 5, 2020) (explaining that "[a] district court possesses the inherent power to enforce an agreement to settle a case pending on the court's docket."); *Jackson v. Fed. Rsrv. Emp. Ben. Sys.*, Case No. CIV. 08-4873(DSD/FLN), 2009 WL 2982924, at *2 (D. Minn. Sept. 14, 2009)(same).

The Eighth Circuit, citing the pre-*Kokkonen* case *Gatz v. Southwest Bank,* 836 F.2d 1089, 1095 (8th Cir. 1988), ruled in *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999), that district courts have the "inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Barry* was factually distinct from the current proceedings in that the parties had submitted to mediation with a federal magistrate judge who retained jurisdiction over the settlement agreement if settlement discussions broke down. *Barry*, 172 F.3d at 1013.

Notwithstanding *Barry* and the other circuits cited above, the Court finds it unnecessary to reach the jurisdictional question, as the Court does not believe plaintiffs have demonstrated the elements necessary to show plaintiffs and Heritage have a valid contract, foreclosing the Court's need to enforce the settlement agreement.

      **B.**    **Settlement Agreement Dispute**

Assuming *arguendo* that this Court has jurisdiction to rule on plaintiffs' motion to enforce the settlement agreement, the Court determines the parties did not reach a meeting of the minds necessary to enforce settlement, based on the record before the Court.

1. **Legal Standard**

Basic principles of contract formation govern the existence and enforcement of settlement agreements. *Chaganti & Assoc., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir. 2001)). "Courts will enforce contracts of settlement if they are not in contravention of law." *DaimlerChrysler Corp. v. Smelser*, 289 S.W.3d 466, 470 (Ark. 2008) (citing *McCoy Farms, Inc. v. J & M McKee*, 563 S.W.2d 409 (Ark. 1978)). "The essential elements of a contract include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *Id.* (citing *Ward v. Williams*, 118 S.W.3d 513, 521 (Ark. 2003)). A court should keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made, and (2) to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Ward*, 118 S.W.3d at 521 (citing *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 80 (Ark. 2005)). Both parties must manifest assent to the particular terms of the contract. *DaimlerChrysler Corp.*, 289 S.W.3d at 470. Further, a party to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous or because he later feels that the amount of the settlement is unsatisfactory. *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983)); *Rutherford v. Rutherford*, 98 S.W.3d 842, 845 (Ark. Ct. App. 2003) ("One party's displeasure with an agreement that she had previously entered into is no ground for relief.").

2. **Analysis**

Despite plaintiffs' assertions, the evidence before the Court suggests that there was never a "meeting of the minds" between plaintiffs and Heritage. Record evidence shows that, on

September 13, 2021, the parties, through their counsel, participated in mediation (Dkt. No. 28). Following that mediation, "the Parties reached a settlement in principle of all claims in this lawsuit" (*Id.*). On September 16, 2021, the parties represented that they were "in the process of finalizing settlement terms and, due to the large number of signatures necessary for their agreement, anticipate[d] filing a Joint Stipulation of Dismissal with Prejudice within 60 days of the filing of [the] Joint Status Report and Notice of Settlement" (*Id.*). Following mediation, counsel for the parties engaged in a series of email exchanges, which plaintiffs argue demonstrates mutual assent between the parties (Dkt. Nos. 44, at 3–7; 44-2; 44-3). The Court has studied these communications in the record in reaching its decision. A contract is valid only if, using objective indicators, it is clear from the context around contract formation that the parties mutually assented to the terms. *Asset Acceptance, LLC v. Newby*, 437 S.W.3d 119, 123 (Ark. 2014); *see also Fairway Ctr. Corp. v. U. I. P. Corp.*, 502 F.2d 1135, 1141 (8th Cir. 1974) ("Whether or not there has been such mutual assent depends on the intention of the parties as determined objectively from their words and actions viewed within the context of the situation and surrounding circumstances."). Based on the objective indicators in the parties' exchanges in the record evidence, counsel for the parties circulated draft agreements, not a finalized and enforceable contract (Dkt. Nos. 44-2; 44-3).

On October 4, 2021, after plaintiffs' counsel sent a redline version of the proposed agreement, Heritage's counsel wrote that his side did "not have any changes, *at this time*." (Dkt. No. 44-2, at 3) (emphasis added). The record indicates that plaintiffs' counsel took the representation of Heritage's counsel to have no changes "at this time" to mean the agreement was finalized and began circulating the agreement in its October 4, 2021, form (*Id.*, at 2). The Court acknowledges that plaintiffs' counsel's communications primarily directed to WARN Act issues

14

on October 15, 2021, at a minimum, put Heritage on notice that plaintiffs were proceeding with the settlement process with their clients (Dkt. No. 44-2, at 2).

However, on October 22, 2021, Heritage's counsel wrote back to plaintiffs' counsel, stating that "v(2)" which the Court understands to be version 2 of the settlement agreement was inadequate, essentially stating that Heritage now had changes at that time (Dkt. No. 44-3, at 12). Subsequent exchanges show that the parties' counsel continued to disagree on the terms and scope of the agreement and that plaintiffs' counsel by sending a preliminary non-finalized agreement to plaintiffs got ahead of the parties' negotiations over the final terms and scope of the agreement. The Court surmises disagreement over confidentiality issues; the final terms of settlement; and the 60-day time period referenced by the parties.

In short, these communications suggest to the Court that plaintiffs and Heritage never had a "meeting of the minds," such that a binding settlement agreement was formed. Heritage's actions in response to plaintiffs' attempts to finalize the proposed settlement agreement objectively show that the parties had a genuine disagreement as to the scope of terms of the agreement. Moreover, Heritage not only refused to execute the proposed settlement agreement but also filed a motion to seal plaintiffs' filings around this motion to enforce because Heritage believed the filings violated the confidentiality requirements of the mediation process (Dkt. No. 49).[2]

---

[2] The Court notes that the Eighth Circuit Court of Appeals has previously stated that courts should hold an evidentiary hearing only when there is a "substantial factual dispute concerning the existence or terms of the settlement agreement or when the situation presents complex factual issues." *Gatz,* 836 F.2d at 1095. Here, the Court finds such a hearing unnecessary, as the record evidence unambiguously indicates that Heritage never agreed to a finalized contract and left open the possibility to make changes to the draft version sent to Heritage on October 4, 2021 (Dkt. No. 44-2, at 3).

The Court concludes, based on the record before it, that there was no meeting of the minds and, therefore, denies plaintiffs' motion to enforce settlement (Dkt. No. 43). *See generally Fairway Ctr. Corp.*, 502 F.2d at 1141 (quoting *Joseph v. Donover Co.*, 261 F.2d 812 (9th Cir. 1958) ("To create a contract . . . the minds of the parties must meet as to every essential term of the proposed contract, and there must be a clear and unequivocal acceptance of a certain and definite offer in order that a mere agreement may become a contract. Therefore, it is necessary, among other things, that the minds of the parties meet as to the essential terms of the proposed contract."))[3]

## IV.     Conclusion

For the forgoing reasons, the Court denies Heritage's motion to strike certain plaintiffs' filings (Dkt. No. 49) and denies plaintiffs' motion to enforce settlement (Dkt. No. 43). However, pursuant to Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 5.2(d), the Court directs the Clerk of Court to place under seal Docket Numbers 43, 44, 44–1, 44–2, 44–3, 44–4, and 44–5. The Court will issue a separate scheduling order placing this case back on the trial calendar.

It is so ordered this 26th day of September, 2022.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge

---

[3] To the extent the Court's current ruling regarding the status of settlement impacts the status of the WARN Act claims previously filed and dismissed, the parties may so inform the Court in a separate filing.