## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JOHNATHAN YASEVICH et al.,**                                                    **PLAINTIFFS**
**Each Individually and on Behalf of**
**All Others Similarly Situated**


**v.**                                    **CASE NO. No. 3:20-cv-19-KGB**


**THE HERITAGE COMPANY, INC.**                                              **DEFENDANTS**
**and SANDRA FRANECKE**


## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, FRCP 56(a)

COMES NOW Defendants, Heritage Company, Inc. ("Heritage") and Sandra Franecke ("Franecke") by and through their attorneys, Charles Darwin "Skip" Davidson, Nickolas W. Dunn, and the Davidson Law Firm, and for their Brief in Support of their Motion for Partial Summary Judgment state:

### INTRODUCTION

The Heritage Company began around 60 years ago. Heritage grew to be one of the leading professional telephone fundraisers for non-profit charities in the nation, one of Arkansas's largest private employers, and the primary source of financial support for over 180 of America's greatest charities.

In late 2019, Heritage suffered a cyber security attack and ultimately, due to the crippling effects of the attack, had to shut its doors. On January 22, 2020, Plaintiffs filed the present action against Heritage and Franecke individually alleging violations of the Fair Labor Standards Act

("FLSA"), the Arkansas Minimum Wage Act ("AMWA"), and the Worker Adjustment and Re-

training Notification Act ("WARN Act"). On February 28, 2020, Plaintiffs filed their First

Amended and Substituted Complaint—Class and Collective Action against Defendants.

Specifically, Plaintiffs request declaratory judgment, monetary damages, liquidated dam-

ages, prejudgment interest, costs and a reasonable attorney's fee as a result of Defendants' alleged

failure to pay Plaintiffs overtime wages as required by the FLSA and AMWA, and as a result of

Defendants' alleged failure to provide sufficient notice of mass layoffs or plant closure as required

by the WARN Act. Plaintiffs claim that Franecke, an officer and owner of Heritage, managed and

controlled the day-to-day operations of Heritage, including the decision not to pay Plaintiff em-

ployees' overtime. **First Amended and Substituted Complaint, ¶¶ 11-12.**

As there are no genuine issues of material fact in dispute, Defendants are entitled to

summary judgment on all of Plaintiffs' claims against Defendant Franecke as a matter of law. The

undisputed facts show that Franecke does not meet the definition of an "employer" under the FLSA

and AMWA and therefore cannot be liable to Plaintiffs as a matter of law for violations of the

FLSA and AMWA. Additionally, as a matter of law, the WARN Act does not apply to individuals.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence, when viewed in the light most favorable to

the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the

defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine

if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local*

*373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient

alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

An affidavit or declaration made in opposition to a motion for summary judgment must be based on personal knowledge, not inadmissible hearsay. Fed. R. Civ. P. 56(c)(4); *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001); *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) (holding that an affidavit containing inadmissible hearsay "may not be used to support or defeat a motion for summary judgment"). An affidavit also must be based on facts, not conclusory statements. *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 691 (8th Cir. 2001) (holding that a properly supported motion for summary judgment is not defeated by conclusory statements in an affidavit). Moreover, a plaintiff cannot defeat summary judgment by merely submitting a self-serving affidavit that contradicts earlier, sworn testimony. *Rucker v. Banks*, No. 5:12-cv-00088-KGB, 2014 U.S. Dist. LEXIS 16332, at *13 (E.D. Ark. Feb. 10, 2014) (citing *Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010); *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) ([A] properly supported motion for summary judgment is not defeated by self-serving affidavits.)).

**ARGUMENT**

**A.      Defendant Franecke is entitled to Summary Judgment as a matter of law on Plaintiffs' FLSA claim.**

Plaintiffs' First Cause of Action (Individual Claims for Violation of the FLSA) and Fourth Cause of Action (Collective Action Claim for Violation of FLSA) against Sandra Franecke are ripe for summary judgment. Plaintiffs claim in their First Amended and Substituted Complaint that Defendant was Plaintiffs' "employer" within the meaning of the FLSA, 29 U.S.C. § 203, is subject to the requirements of the FLSA, and violated the FLSA by not paying Plaintiffs for overtime they allegedly worked as employees of Defendant. **First Amended and Substituted Complaint, ¶¶ 103-111; 128-136.** While it is unclear from Plaintiffs' use of the word "Defendant" whether Plaintiffs mean both Defendants or just one, Defendants assume that Plaintiffs bring these claims against both Heritage and Franecke. As there are no genuine issues of material fact to support the claim that Franecke meets the definition of an "employer" within the framework of the FLSA, she is entitled to summary judgment on Plaintiffs' First and Fourth Causes of Action.

The FLSA defines an employer as:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C.S. § 203 (d).

"The Eighth Circuit has held that a corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA." *Simms v. Northport Health Servs of Ark., LLC.*, 2:12-CV-02252, 2013 U.S. Dist. LEXIS 68302, 2013 WL 2102974 (W.D. Ark. May 14, 2013) (citing *Wirtz*, 322 F.2d at 262-63)). "The so-called 'active management test' provides that a corporate officer may be included in the definition of 'employer'

if he hires the supervisors and home office workforce and if the wages of the corporation's employees are subject to his control, if only in varying degrees." *Id.* (citing *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956)). *Wirtz* and its progeny "require 'operational control of significant aspects of . . . day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 388 (E.D. Mo. 2014) (quoting *Hembree v. Mid-Continent Transp., Inc.*, 09-6094-CV-SJ-HFS, 2011 U.S. Dist. LEXIS 134162, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011)).

The Eighth Circuit has looked to "factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the 'employer.'" *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799, 802-03 (E.D. Ark. 1990) (citing *Wirtz v. Pure Ice Company*, 322 F.2d 259 (8th Cir. 1963); *Fruco Const. Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951)). Consistent with the purpose of the four-factor test, no one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity. *Baker v. Stone Cnty., Mo.*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (citations omitted).

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d); *Wirtz*, 322 F.2d at 262. In determining whether an individual qualifies as an employer, courts "look to the economic realities of the circumstances rather than the technical common law concepts of agency." *Childress v. Ozark Delivery of Missouri, LLC*, 95 F.Supp.3d 1130, 1139 (W.D. Mo. 2015) (citing *Goldberg v. Whitaker*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)); *see also Roslov v. DirecTV Inc.*, 218 F.Supp.3d 965, 972 (E.D. Ark. 2016). Courts within the Eighth Circuit consider the totality of the circumstances. *Childress*, 95 F.Supp.3d at 1139. The analysis typically starts with a review of

four factors: (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled the plaintiff's work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained the plaintiff's employment records. *Id.* (citing *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 U.S. Dist. LEXIS 72346, 2011 WL 2650272, at *2 (W.D. Mo. July 6, 2011); *Schubert v. Bethesda Health Group, Inc.*, 319 F.Supp.2d 963, 971 (E.D. Mo. 2004)). These factors are not exhaustive and no one factor is dispositive. *Hicks v. Lindsey Mgmt. Co.*, No. 3:18-cv-00133 KGB, 2019 U.S. Dist. LEXIS 221298, at *14-15 (E.D. Ark. Sep. 5, 2019). The undisputed facts show that none of the four factors are present here, nor any other facts that suggest Franecke should be classified as Plaintiffs' employer within the context of the FLSA.

The first specific factor for the Court to consider is Franecke's power to hire and fire Plaintiffs. Franecke had no direct control or duties associated with hiring and firing Plaintiffs. **Affidavit of Jennifer Franecke, ¶ 3, attached as Exhibit A.** There was a chain of command within Heritage and protocols in place that directly related to this process. ***Id.*** At the employment level of Plaintiffs, Heritage had supervisors and human resources representatives that oversaw hiring and firing of employees within the same roles as Plaintiffs. ***Id.*, at ¶ 4.** Franecke was not consulted before hiring or firing any of Plaintiff employees. ***Id.*** This function would have been handled by supervisors such as Derek Followell, Derek Tutolo, Jeff Spence, and David McNeill. ***Id.*** Mr. Yasevich testified during his deposition that Ms. Franecke was not part of his hiring process. **Deposition of Johnathan Yasevich, Pgs. 20-21, attached as Exhibit B.** Instead, he met with a lady from HR named Muna Maggit who interviewed him and ultimately offered him a job with Heritage. ***Id.***

The second specific factor for the Court to consider is whether Franecke supervised and controlled the Plaintiffs' work schedules or conditions of employment. Franecke did not supervise Plaintiffs. **Affidavit of Jennifer Franecke, ¶ 5.** Instead, Plaintiffs had on sight sales managers who performed these duties. *Id.* In fact, Franecke primarily resided in California during the applicable statutory period for Plaintiffs' claims and was almost never at a physical Heritage location. **Affidavit of Jennifer Franecke, ¶ 6.** Mr. Yasevich stated in his deposition that the TSRs (Plaintiffs' positions) were salespeople who were constantly making calls. **Deposition of Johnathan Yasevich, Pgs. 29-30, attached as Exhibit B.** The TSRs were directly supervised by the "coaches" who kept up with everyone's stats or how many contacts they were making. *Id. at. P. 36.* The coach would have 12 TSRs making calls in his or her section and would be in charge of monitoring the calls. *Id.* The coaches would also set goals for the TSRs and build morale. *Id. at P. 37.* Mr. Yasevich further explained in his deposition that there were TSRs, coaches, then shift managers, and then after them were the directors. *Id. at 39.* He stated that above the directors would have been some executive group, but he had only seen them maybe once. *Id.* As can clearly be seen by Mr. Yasevich's testimony, it was the coaches or the directors of the facility that supervised Plaintiffs, not Ms. Franecke.

Franecke did not set Plaintiffs' work schedules. **Affidavit of Jennifer Franecke, ¶ 7.** This task was handled by supervisors such as Derek Followell, Derek Tutolo, Jeff Spence, and David McNeill. *Id.* As far as the conditions of employment for Plaintiffs are concerned, this would have been handled by the onsite supervisors, again not Franecke. *Id.* Plaintiff Johnathan Yasevich admits all of this in his deposition. Mr. Yasevich stated that he had never personally spoken to Ms. Franecke. **Deposition of Johnathan Yasevich, P. 83, attached as Exhibit B.** She was not part of his hiring process. *Id. at Pgs. 20-21.* As they had never spoken before, she also had never instructed

7

him to perform any work tasks. *Id.* His understanding of her role with the company was that she owned it. *Id.* She was not operating in any supervisory role. *Id. at P. 84.* Mr. Yasevich started working for Heritage in 2014 and continued to work there until it closed in 2019. *Id. at P. 11-12.* During that course of time, he saw Ms. Franecke a total of two (2) times. *Id. at P. 39.* Mr. Yasevich stated in his deposition that it was Ms. Maggit with the HR office who initially gave him his schedule. *Id. at P. 21.*

The third specific factor for the Court to consider is whether Franecke determined the rate and method of payment of Plaintiffs. Franecke had nothing to do with setting Plaintiffs' rates of pay or their method of payment. **Affidavit of Jennifer Franecke, ¶ 8.** Payment rates and methods were calculated during the hiring process, and adjusted during employment according to performance, hours, longevity, and like factors by employees' supervisors. *Id.* Mr. Franecke also testified on this matter. When asked who was in charge of deciding his pay rate he said, "The Followells" and then went on to describe how pay increases were determined. **Deposition of Johnathan Yasevich, P. 84.** He stated that he never had that conversation with Franecke nor had he ever seen her have that conversation with any other employees. *Id. at Pgs. 84-85.* The only time he saw her was when she came in for celebration-type deals and speaking to the facility. *Id. at 85.* When he was asked if he would have reported issues with his time or schedule to her, he stated, "No. No. She was never there, so it wouldn't - - I don't even know how I would have got a hold of her if I wanted to." *Id.*

The fourth specific factor for the Court to consider is whether Franecke maintained the Plaintiffs' employment records. Franecke did not maintain any employment records. **Affidavit of Jennifer Franecke, ¶ 9.** Employment records were maintained by supervisors and the HR department. *Id.*

During the appliable statutory period Sandra Franecke was dealing with serious health issues and entrusted the day-to-day operations of the company to management employees. **Affidavit of Jennifer Franecke, ¶ 10.** TSR employees were managed on a daily basis by Derek Followell, Derek Tutolo, Jeff Spence, and David McNeill. *Id.* Clarence Young supervised the sales teams and handled human resources. *Id.* Shannon Brennan, Dana Thomas, and Chip Miller did analytics and gave the needed hours to fulfill campaigns to the sales floor who would schedule the salespeople to fulfill those hours needed. *Id.* Sandra Franecke's duties during the applicable statutory period were minimal, consisting of input when necessary geared more toward large company future decisions rather than the day-to-day operations. *Id.* Mr. Yasevich testified in his deposition, upon questioning by his own attorney, that the "Dereks" Derek Tutolo and Derek Followell were in charge of everything, the buck stopped with them. **Deposition of Johnathan Yasevich, P. 89.** Mr. Yasevich was even asked if he thought Derek Tutolo would have had to go to someone above him for approval and he said that Tutolo had free range to make a lot of decisions. *Id.*

To further drive home that there are no facts to support Plaintiffs' contention that Franecke in her individual capacity should be liable to Plaintiffs for unpaid overtime wages, the Court can turn to the discovery responses of specific Plaintiffs. When Mr. Yasevich was asked to identify all information known to him that supports his contention that Sandra Franecke, in her individual capacity, is liable to Plaintiffs he stated, "None." **Johnathan Yasevich Supplemental Response to Interrogatory No. 13, attached as Exhibit C.** Plaintiff Kathy Burdress had the same answer. **Kathy Burdress Response to Interrogatory No. 13, attached as Exhibit D.** There are several other Plaintiffs with the same response. Plaintiff Detrick Brown was asked that question and he said, "I never met Sandra, so I am not sure. I did complain to my managers and coworkers about

being clocked out to switch between program, though." **Detrick Brown Response to Interrogatory No. 13, attached as Exhibit E.**

When Plaintiff Jerol Amaya was asked the same question, Amaya stated, "She knew about the processes and people made complaints to her." **Jerol Amaya Response to Interrogatory No. 13, attached as Exhibit F.** When Plaintiff Gabrielle Anderson was asked, she said, "I know that Sandra was the owner of the company and I believe that she would know about the flaws in the company's processes that caused me to be underpaid for that reason." **Gabrielle Anderson Response to Interrogatory No. 13, attached as Exhibit G.** Assuming those statements by Amaya and Anderson were true, that does not make Franecke an employer as defined by the FLSA. Having knowledge of processes and being told complaints does not mean that Franecke had any of the duties or job functions that would qualify her as an employer of Plaintiffs.

As Ms. Franecke does not meet the definition of an employer under the FLSA, Plaintiffs claims against her under the FLSA fail as a matter of law and Franecke is entitled to summary judgment on that claim.

**B.    Defendant Franecke is entitled to Summary Judgment as a matter of law on Plaintiffs' AMWA claim.**

Plaintiffs' Second Cause of Action (Individual Claims for Violation of the AMWA) against Sandra Franecke is also ripe for summary judgment. Plaintiffs claim in their First Amended and Substituted Complaint that Defendant was Plaintiffs' "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4), is subject to the requirements of the AMWA, and violated the AMWA by not paying Plaintiffs for overtime they allegedly worked as employees of Defendant. **First Amended and Substituted Complaint, ¶¶ 112-119.** While it is unclear from Plaintiffs' use of the word "Defendant" whether Plaintiffs mean both Defendants or just one, Defendants assume that Plaintiffs bring these claims against both Heritage and Franecke. As there

10

are no genuine issues of material fact to support the claim that Franecke meets the definition of an "employer" within the framework of the AMWA, she is entitled to summary judgment on Plaintiffs' Second Cause of Action.

The AMWA defines an employer as:

> "Employer" means any individual, partnership, association, corporation, business trust, the State of Arkansas, any political subdivision of the state, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee.

Ark. Code Ann. § 11-4-203 (4)(A).

The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner. *Carter v. Primary Home Care of Hot Springs, Inc.*, No. 6:14-CV-6092, 2015 U.S. Dist. LEXIS 181988, at *6 (W.D. Ark. May 14, 2015) (citing *Whitworth v. French Quarter Partners, LLC*, No. 13-cv-6003, 2014 U.S. Dist. LEXIS 190419 (W.D. Ark. June 30, 2014); *Lyons v. Conagra Foods Packaged Foods, LLC*, No. 4:12-cv-245, 2013 U.S. Dist. LEXIS 193882, *200 (E.D. Ark. Oct. 31, 2013); *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011)). In addition, Arkansas Administrative Code Title 010.14.1-112 provides that the Arkansas Department of Labor may rely upon federal precedent established by the FLSA in interpreting the AMWA. *Ghess v. Kaid*, No. 2:19-cv-00021 KGB, 2020 U.S. Dist. LEXIS 222031, at *25-26 (E.D. Ark. Nov. 27, 2020). Courts regularly use FLSA precedent to interpret the AMWA. *See Karlson v. Action Process Serv. & Private Investigation, LLC*, 860 F.3d 1089, 1092 n.3 (8th Cir. 2017); *Harris v. Express Courier Int'l*, No. 5:16-CV-05033, 2017 U.S. Dist. LEXIS 192363, 2017 WL 5606751, at *4 (W.D. Ark. Nov. 21, 2017).

11

The definition of an employer under the FSLA and the AMWA are parallels and should be interpreted in the same manner. The following language can be found in both definitions, "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.S. § 203 (d); Ark. Code Ann. § 11-4-203 (4)(A). Accordingly, the four-factor test applied in the FLSA context applies here when determining if a Defendant meets the definition of an employer under the AMWA. For the same reasons that Ms. Franecke is not an employer under the FLSA, as described above, she is not an employer under the AMWA. She did not possess the power to hire and fire the Plaintiffs; she did not supervise and control the Plaintiffs' work schedules or conditions of employment; she did not determine the rate and method of payment for Plaintiffs; and she did not maintain the Plaintiffs' employment records.  As Ms. Franecke does not meet the definition of an employer under the AMWA, Plaintiffs claims against her under the AMWA fail as a matter of law and Franecke is entitled to summary judgment on that claim.

**C.      Defendant Franecke is entitled to Summary Judgment as a matter of law on Plaintiffs' WARN Act claim.**

Plaintiffs' Third Cause of Action (Individual Claims for Violation of the WARN Act) and Fifth Cause of Action (Class Action for Violation of the WARN Act) against Sandra Franecke are also ripe for summary judgment. Plaintiffs claim in their First Amended and Substituted Complaint that Defendant was Plaintiffs' "employer" within the meaning of the WARN Act, 29 U.S.C. § 2101 et seq., is subject to the requirements of the WARN Act, and violated the WARN Act by ordering a plant closing or mass layoff before the end of a 60-day period after Defendant employer served written notice of the order to each affected employee Plaintiff. **First Amended and Substituted Complaint, ¶¶ 120-127; 137-144.** As with all of the other claims made by Plaintiffs, it is unclear from Plaintiffs' use of the word "Defendant" whether Plaintiffs mean both Defendants or just one, Defendants assume, however, that Plaintiffs bring these claims against both Heritage and Franecke.

As there are no genuine issues of material fact to support the claim that Franecke meets the

definition of an "employer" within the framework of the WARN Act, she is entitled to summary

judgment on Plaintiffs' Third and Fifth Causes of Action.

The WARN Act defines an employer as:

> the term "employer" means any ***business enterprise*** that employs—
> (A) 100 or more employees, excluding part-time employees; or
> (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)

29 U.S.C.S. § 2101 (a)(1) (emphasis added).

The WARN Act authorizes the Secretary of Labor (the "Secretary") to promulgate

regulations necessary to carry out its provisions. *See* 29 U.S.C. § 2107(a). In this regard, the

Secretary has provided as follows:

> "The term 'employer' includes non-profit organizations of the requisite size. Regular Federal, State, local and federally recognized Indian tribal governments are not covered. However, the term 'employer' includes public and quasi-public entities which engage in business (i.e., take part in a commercial or industrial enterprise, supply a service or good on a mercantile basis, or provide independent management of public assets, raising revenue and making desired investments), and which are separately organized from the regular government, which have their own governing bodies and which have independent authority to manage their personnel and assets."

20 C.F.R. § 639.3.

In addition, the Senate-House Conference Report which accompanied the WARN

legislation stated as follows:

> "Employer. The Conference Agreement retains the Senate Amendment language that the term 'employer' means a business enterprise. The Conferees intend that a 'business enterprise' be deemed synonymous with the terms company, firm or business, and that it consist of one or more sites of employment under common ownership or control. For example, General Motors has dozens of automobile plants throughout the country. Each plant would be considered a site of employment, but as provided in the bill, there is only one 'employer' - General Motors."

*Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 609 (E.D.N.Y. 1991) (citing House Conf. Rep. No. 100-576, 100th Cong., 2nd Sess., 1045, 1046 [reprinted in 5 U.S. Code Cong. & Admin. News [1988], 2078, 2079] [emphasis supplied])).

The statute, regulations, and legislative history all indicate that Congress defined "employer" as a "business enterprise" and intended a "business enterprise" to mean a corporate entity, not an individual. Additionally, district courts have consistently held that direct claims made against individuals, even owners, are not cognizable under the WARN Act. *Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1054 (D. Minn. 2021) (citing *Warshun v. N.Y. Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013) (holding that "business enterprise" means "a corporate entity— i.e. corporation, limited partnership, or partnership—not an individual"); *see also Regal v. Butler & Hosch, P.A.*, No. 15-61081, 2015 U.S. Dist. LEXIS 182446, 2015 WL 11198248, at *3 (S.D. Fla. Oct. 8, 2015) (collecting cases)).

As the WARN Act only applies to corporate entities, and not individuals, as a matter of law Sandra Franecke is entitled to summary judgment on Plaintiffs' WARN Act claims.

## CONCLUSION

For the foregoing reasons, the Court should determine that there are no genuine issues of material fact that would show separate Defendant Sandra Franecke meets the definition of an "employer" under the FLSA, AMWA, or the WARN Act. As there are no genuine issues of material fact on these claims, Defendant Sandra Franecke is entitled to summary judgment on all of Plaintiffs' claims as a matter of law, along with all other just and proper relief that this Court deems appropriate.

Respectfully submitted,

Charles Darwin "Skip" Davidson; ABN 73026
Nickolas W. Dunn, ABN 2019115
**DAVIDSON LAW FIRM**
724 Garland, Cantrell at State
P.O. Box 1300
Little Rock, AR 72201
(501) 320-5132
Fax: (501) 374-5917
E-mail: skipd@dlf-ar.com
            nickd@dlf-ar.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I, Nickolas W. Dunn, do hereby certify that I have sent via:

☐ Hand Delivery
☐ Telefax
☐ Electronic mail
☐ U.S. Mail
☐ U.S. Mail, Certified, Return Receipt (as noted below)
☐ STATE CM/ECF System
☑ Federal Court ECF System (as noted below)

this **5th** day of **June 2023**, a true and complete copy of the forgoing to the following individuals:

**Josh Sanford**
**Daniel Ford**
SANFORD LAW FIRM, PLLC
650 S. Shackleford, Suite 411
Little Rock, Arkansas 72211

Nickolas W. Dunn