IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JONATHAN YASEVICH, et al.,**　　　　　　　　　　　　　　　　**PLAINTIFFS**
**Each Individually and on Behalf**
**Of All Others Similarly Sitatued**

vs.　　　　　　　　　　　　　　No. 3:20-cv-19-KGB

**THE HERITAGE COMPANY, INC.**　　　　　　　　　　　　**DEFENDANTS**
**and SANDRA FRANECKE**

## RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.　　INTRODUCTION

The Motion for Partial Summary Judgment filed by Defendant (ECF No. 66) must be denied because Plaintiffs have presented a genuine question of material fact for every issue raised by Defendants.[1] More specifically, Plaintiffs have provided evidence that Defendant Sandra Franecke, in her role as Chief Executive Officer and owner of The Heritage Company, Inc., functioned as Plaintiffs' employer under the FLSA's "expansive" definition of employer. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 974 (5th Cir. 1984) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Because Plaintiffs have demonstrated that a genuine issue exists for every fact raised by Defendants, Defendants have not met their burden on summary judgment and their Motion must be denied.

### II.　　STANDARD OF REVIEW

Summary judgment is proper only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Enter. Bank v. Magna Bank*,

---

[1] With one exception: Plaintiffs acknowledge that the WARN Act does not apply to individual employers and concede dismissal of Defendant Dont Franecke as to those claims.

Page 1 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

92 F.3d 743, 747 (8th Cir. 1996) (citing Fed. R. Civ. P. 56(c)).  "The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.*  Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Eastman v. United States*, No. 06-CV-1069, 2009 U.S. Dist. LEXIS 73415, at *4 (W.D. Ark. Aug. 19, 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, (1986)).

In deciding whether there is sufficient evidence favoring the nonmoving party, "the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party."  *Id.* (citing *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006)). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson*, 477 U.S. at 255).

### III.   ARGUMENT

As owner, operator, and CEO of The Heritage Company, Inc. ("Heritage"), Defendant Sandra Franecke ("Ms. Franecke") set policies and procedures that affected control over employees such as Plaintiffs' work such that she is an "employer" under the FLSA. Ms. Franecke's physical presence and personal oversight is not required to achieve employer-status because the policies she enacted and the control over Heritage she exerted set the standards for the day-to-day operations and functions of Plaintiffs' job duties. In setting policies regarding employee breaks, call scripts, and most importantly, how TSRs were to manage their time while switching between computer programs and

Page 2 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

stations, Ms. Franecke's control was felt through Plaintiffs' employment such that she was their employer under the FLSA.

### A. Legal Standard: Employers Under the FLSA.

"The [FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). To that end, the FLSA defines employment with a "striking breadth" that "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The test is one of "economic reality," rather than "technical concepts." *See Karlson v. Action Process Serv. & Private Investigation, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985)); *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Key factors under this test of economic reality include whether an alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)); *see also Irizarry v. Catsimatidis*, 2013 U.S. App. LEXIS 13796, 11 (2d Cir. N.Y. July 9, 2013); *Baker v. Stone County*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (applying the same four-factor test).

"On its face, the definition of 'employer' can be read to cover owners or officers of a corporation in their individual capacities." *Wandrey v. CJ Pro"l Satellites, Inc.*, No. 5:14-

Page 3 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

CV-05087, 2014 U.S. Dist. LEXIS 125971, at *8 (W.D. Ark. Sep. 9, 2014) (citing *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002)). A corporate officer with operational control over the corporation's day-to-day functions may be an employer as contemplated by the FLSA if the officer supervises the relationship between the corporation and its employees. *See Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259, 262–63 (8th Cir. 1963). Likewise, the Eighth Circuit has held that "an individual who was the primary shareholder, as president and general manager, of a corporation, and who engaged in 'active management' of the corporation' such as hiring and setting wages 'could be an employer under the FLSA." *Wandrey*, 2014 U.S. Dist. LEXIS 125971, at *9 (quoting *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956)).

      Courts have found individual executives of various companies to be employers for FLSA purposes even when those individuals had almost no interaction with employees and delegated almost all supervision and management to others. *See, e.g.*, *Hicks v. Lindsey Mgmt. Co.*, No. 3:18-cv-00133 KGB, 2019 U.S. Dist. LEXIS 221298, at *16-17 (E.D. Ark. Sep. 5, 2019 (finding a question of fact as to whether the owner was an employer when he "overs[aw] the executive management of the accounting, human resources[,] and legal departments," but did not have "any operational control over the employees."); *White v. 14051 Manchester, Inc.*, 301 F.R.D. 368, 389 (E.D. Mo. 2014) (executive was an employer even though she had little contact with employees because "she drafted at least part of the employee handbook and she signed the employees' paychecks."); *Rikard v. U.S. Auto Prot., LLC*, No. 4:11CV1580 JCH, 2013 U.S. Dist. LEXIS 134704, at *15–16 (E.D. Mo. Sep. 20, 2013) (executive was an employer because he "attended marketing meetings, met with [the company's] accountants, handed out

Page 4 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

bonus checks to managers, disciplined and ultimately terminated [an employee], and eventually decided to close the company); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-1437 (DWF/SRN), 2007 U.S. Dist. LEXIS 85392, at *13–15 (D. Minn. Nov. 16, 2007) (owners were employers because they formulated and implemented employee payment plans; were responsible "either directly or indirectly" for hiring and firing employees, and were specifically responsible for hiring the supervisors who oversaw other employees; "[a]nd they had a significant financial stake in [the company], as evidenced by their 20% ownership interest in the company as well as their 2006 capital contribution and personal guarantees on the company's line-of-credit.").

### B. Ms. Franecke was an "employer" under the FLSA and the AMWA.[2]

Based on the broad definition of employer described above, Ms. Franecke is clearly liable as Plaintiffs' employer under the FLSA. It is entirely possible for Ms. Franecke to never once personally interact with one of Heritage's TSRs and yet still be liable for improper compensation as those TSRs' employer. As described above, the FLSA does not require individual employers to personally hire or fire employees, set specific schedules or control work conditions, or maintain employment records, so long as that individual has sufficient control over those who do hire and fire, set schedules, or maintain work conditions. Ms. Franecke, as owner and CEO of Heritage, was the brain and impetus behind all of the policies that affected Plaintiffs' employment.

Ms. Franecke may not have personally overseen the hiring and firing of all of Heritage's employees, but her hand and influence were evident throughout the process.

---

[2] As explained by Defendants in their Motion for Partial Summary Judgment, the AMWA adopts the same analysis as the FLSA in determining individual employer status and so a finding of employer status under the FLSA is equally a finding of employer status under the AMWA.

Page 5 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

Although Heritage's human resources department hired Plaintiffs, it was Plaintiffs' impression that these decisions were made pursuant to pre-set criteria determined by Heritage's executive officers, specifically Ms. Franecke. Decl. of Johnathan Yasevich ("Decl. Yasevich") ¶ 13, attached as Ex. 1; Decl. of Pamela Cannon ("Decl. Cannon") ¶ 13, attached as Ex. 2; Decl. of Ronald Denney ("Decl. Denney") ¶ 12, attached as Ex. 3; Decl. of Chanell Williams ("Decl. Williams") ¶ 13, attached as Ex. 4. If Plaintiffs had not met that pre-set criteria, then the human resources officer would have been required to either not hire that Plaintiff or get executive approval from Ms. Franecke before that Plaintiff could be hired. Decl. Yasevich ¶ 13; Decl. Cannon ¶ 13; Decl. Denney ¶ 13; Decl. Williams ¶ 13. This is confirmed through Defendants' own evidence. According to Jennifer Franecke, Heritage employees were hired and fired through "a chain of command within Heritage and protocols in place that directly related to this process." Aff. of Jennifer Franecke ("Aff. Franecke") ¶ 3, ECF No. 66-1. Notably absent from Defendants' evidence is any indication of how those protocols were set or who set them, but Plaintiffs' testimony is clear that Ms. Franecke was the executive with the highest power and say in implementing these policies. Decl. Yasevich ¶ 10–11; Decl. Cannon ¶ 10–11; Decl. Denney ¶ 10; Decl. of Jennifer Long ("Decl. Long") ¶ 10, attached as Ex. 5; Decl. Williams ¶ 10–11.

Moreover, employers under the FLSA are not required to "directly" hire employees if they are "indirectly" responsible for hiring either by setting protocols as described above, or by hiring the individuals who directly hire others. *Saunders*, 2007 U.S. Dist. LEXIS 85392, at *13–15; *see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003) (stating that "it did not matter that the putative employer did not

Page 6 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

directly hire workers, but only managerial staff, and that he did not have direct control over the workers in question."). While local supervisors suchas Derek Followell, Derek Tutolo, Jeff Spence, and David McNeill were responsible for hiring TSRs such as Plaintiffs subject to the protocols set by Ms. Franecke, as the head of Heritage's executive office, Ms. Franecke was responsible for hiring Mr. Followell, Mr. Tutolo, Mr. Spence and Mr. McNeill. Aff. Franecke ¶ 3–4. Thus, Ms. Franecke was indirectly responsible for the hiring of all of Heritage's employees.

Likewise, Ms. Franecke's presence was felt in Heritage's policies regarding termination. Ms. Franecke set a policy stating that a failure to meet certain quotas was grounds for termination. Decl. Williams ¶ 19. Ms. Franecke also required executive approval prior to terminating TSRs for other reasons. Decl. Long ¶ 18 ("if my managers wanted to fire someone, they had to get approval from upper management prior to doing so."). Further, Ms. Franecke played an operational role in promotions and demotions of employees. Ms. Franecke was responsible for at least one Plaintiff's demotion in that she made the decision to remove a specific position and demote Plaintiff Grimes. Decl. of Katrina Grimes ("Decl. Grimes") ¶ 18, attached as Ex. 6. While Ms. Franecke may have never personally hired or fired a single employee, she was instrumental in setting the policies that allowed for the hiring and firing of those employees such that she had operational control over the hiring and firing of the company.

Ms. Franecke's presence was felt most acutely in the day-to-day business operations of Heritage, including in Plaintiffs' schedules and their work conditions. While each specific call center's managers and supervisors set Plaintiff's weekly schedules, it was Ms. Franecke who set policies regarding when breaks were allowed and at what

Page 7 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

length. Decl. Yasevich ¶ 22. Ms. Franecke set the call scripts that Plaintiffs used to perform their job duties and set the policies determining how to place and end calls. Decl. Denney ¶ 19 ("any time they wanted to change our call script, our managers would have to get executive approval."); Decl. Cannon ¶ 23 ("we were told that you had to take three no's before you could end a call with a donor, and that Ms. Franeke was the one who established these rules with her mother back when they started the business.").

More broadly, Ms. Franecke's name was bandied around following her regular meetings with each call center's site managers regarding policy updates and changes. Decl. Yasevich ¶ 11–12, 19; Decl. Cannon ¶ 11–12, 19; Decl. Denney ¶ 11, 17; Decl. Grimes ¶ 11–12; Decl. Long ¶ 11–12, 16; Decl. Williams ¶ 11–12, 18–19. The site managers always returned from these meetings with some new policy or tip from Ms. Franecke regarding how Plaintiffs were expected to perform their jobs. Decl. Yasevich ¶ 19; Decl. Cannon ¶ 18–19; Decl. Denney ¶ 17; Decl. Grimes ¶ 17; Decl. Long ¶ 16; Decl. Williams ¶ 18–19. Ms. Franecke controlled employees' hours because she required site managers to get executive approval before approving any overtime requests. Decl. Grimes ¶ 20. Ms. Franecke was responsible for management of the Heritage employee Facebook page, on which she would regularly post policy updates and changes as well as employee shout-outs and accolades. Decl. Yasevich ¶ 25; Decl. Cannon ¶ 26; Decl. Long ¶ 22; Decl. Williams ¶ 24. Accordingly, Ms. Franecke wrote, implemented, and communicated the policies that dictated Plaintiffs' working conditions.

As with the policies that affected Plaintiffs' schedules and working conditions, Ms. Franecke set the policies that determined their rates of pay and wages. Plaintiffs' rates of pay were set by Heritage's executive officers, specifically Ms. Franecke. Decl. Yasevich

Page 8 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

¶ 15; Decl. Cannon ¶ 15; Decl. Denney ¶ 14; Decl. Grimes ¶ 14; Decl. Long ¶ 13; Decl. Williams ¶ 15. Plaintiff Yasevich negotiated a higher hourly rate when he was hired, but that increase had to be approved by Ms. Franecke before he could receive it. Decl. Yasevich ¶ 15. Even if Ms. Franecke left the day-to-day determination of hourly rates to her site managers, Ms. Franecke signed the pay checks that were doled out according to those hourly rates, lending her tacit approval to all pay rates. Decl. Yasevich ¶ 16; Decl. Cannon ¶ 16; Decl. Denney ¶ 15; Decl. Grimes ¶ 15; Decl. Williams ¶ 16. Finally, and arguably most importantly, Ms. Franecke is the party responsible for the policy leading to the filing of this lawsuit: it was Ms. Franecke's decision not to pay Plaintiffs for the time they spent switching between computer programs and stations. Decl. Cannon ¶ 19 ("we were told that we wouldn't be paid for the extra time required to switch computers and that my managers specifically said it was being implemented because Ms. Franecke wanted it done that way."). *See Saunders*, 2007 U.S. Dist. LEXIS 85392, at *14 (noting that the individual defendants had control over the policies that violated the FLSA). *See also Holmes v. Stetson Courier, Inc.*, No. 4:20-cv-191-DPM, 2022 U.S. Dist. LEXIS 193488, at *3-4 (E.D. Ark. Oct. 24, 2022) (noting that the individual defendant personally determined to classify the plaintiffs as independent contractors, which was the impetus behind the lawsuit); 301 F.R.D. at 389 (noting that the individual defendant made the decisions and wrote the policies that led to the filing of the lawsuit).

Finally, that Ms. Franecke did not personally maintain Plaintiffs' employment records is hardly determinative. Heritage undoubtedly maintains employment records, and Ms. Franecke's control of Heritage without a doubt controlled aspects of how Heritage maintained records. Regardless, Ms. Franecke controlled the creation, implementation,

Page 9 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

and dissemination of the Heritage employee handbook that was passed out to Plaintiffs at the beginning of their employment. Decl. Yasevich ¶ 10–12, 14; Decl. Cannon ¶ 10–12, 14; Decl. Denney ¶ 10–11, 13; Decl. Grimes ¶ 13; Decl. Long ¶ 10–12; Decl. Williams ¶ 10–12, 14. Likewise, Ms. Franecke signed Plaintiffs' paychecks, and thus her name appears on Plaintiffs' employment records. Decl. Yasevich ¶ 15–16; Decl. Cannon ¶ 15–16; Decl. Denney ¶ 14–15; Decl. Grimes ¶ 15; Decl. Long ¶ 13; Decl. Long ¶ 15–16. Despite her lack of direct employee contact, Ms. Franecke undoubtedly ran Heritage such that her influence touched every aspect of Plaintiffs' employment.

Aside from the factors outlined above, Ms. Franecke impacted Plaintiffs' work in ways that other courts have found determinative of employer status. For example, Ms. Franecke handed out employee awards for achieving certain markers, including cruise tickets that she personally paid for. Decl. Yasevich ¶ 24; Decl. Cannon ¶ 25; Decl. Grimes ¶ 23; Decl. Long ¶ 21; Decl. Williams ¶ 23; *see also* Dep. of Johnathan Yasevich ("Dep. Yasevich") 39:20–40:5, 75:25–76:25, 78:1–9, ECF No. 66-2. *See also Rikard*, 2013 U.S. Dist. LEXIS 134704, at *15–16 (noting that the individual defendant handed out incentive bonus checks to employees). Likewise, Ms. Franecke made the decision to close the business, a decision that contributed to the Eastern District of Missouri's determination of employer liability in *Rikard*. *See* Dep. Yasevich 16:3–13, 77:8–25; *Rikard*, 2013 U.S. Dist. LEXIS 134704, at *15–16.

## IV.   CONCLUSION

Plaintiffs have presented an obvious and clear showing of Ms. Franecke's role in Heritage's business operations. Even without direct employee involvement, Ms. Franecke set policies and procedures that were followed and felt throughout the business. Ms.

Page 10 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment

Franecke's operational control of Heritage unequivocally shows that she was Plaintiffs' employer under the FLSA. For all the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

**JONATHAN YASEVICH, et al.,
PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

**Page 11 of 11
Jonathan Yasevich, et al. v. The Heritage Company, Inc., et al.
U.S.D.C. (E.D. Ark.) Case No. 3:20-cv-19-KGB
Response to Motion for Summary Judgment**