**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**


**JOHNATHAN YASEVICH et al.,**                                         **PLAINTIFFS**
**Each Individually and on Behalf of**
**All Others Similarly Situated**


**v.**                              **CASE NO. No. 3:20-cv-00019-KGB**


**THE HERITAGE COMPANY, INC.**                              **DEFENDANTS**
**and SANDRA FRANECKE**


## DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, FRCP 56(a)

COMES NOW Defendants, Heritage Company, Inc. ("Heritage") and Sandra Franecke ("Franecke") by and through their attorneys, Charles Darwin "Skip" Davidson, Nickolas W. Dunn, and the Davidson Law Firm, and for their Reply Brief in Support of their Motion for Partial Summary Judgment state:

### INTRODUCTION

The Heritage Company began around 60 years ago. Heritage grew to be one of the leading professional telephone fundraisers for non-profit charities in the nation, one of Arkansas's largest private employers, and the primary source of financial support for over 180 of America's greatest charities.

In late 2019, Heritage suffered a cyber security attack and ultimately, due to the crippling effects of the attack, had to shut its doors. On January 22, 2020, Plaintiffs filed the present action against Heritage and Franecke individually alleging violations of the Fair Labor Standards Act

("FLSA"), the Arkansas Minimum Wage Act ("AMWA"), and the Worker Adjustment and Re-training Notification Act ("WARN Act"). On February 28, 2020, Plaintiffs filed their First Amended and Substituted Complaint—Class and Collective Action against Defendants.

Specifically, Plaintiffs request declaratory judgment, monetary damages, liquidated damages, prejudgment interest, costs and a reasonable attorney's fee as a result of Defendants' alleged failure to pay Plaintiffs overtime wages as required by the FLSA and AMWA, and as a result of Defendants' alleged failure to provide sufficient notice of mass layoffs or plant closure as required by the WARN Act. Plaintiffs claim that Franecke, an officer and owner of Heritage, managed and controlled the day-to-day operations of Heritage, including the decision not to pay Plaintiff employees' overtime. ***First Amended and Substituted Complaint, ¶¶ 11-12.***

Defendants moved for summary judgment, establishing that Plaintiffs have no genuine facts to support their claims that Sandra Franecke meets the definition of an employer under the FLSA, AMWA, or the WARN Act and, accordingly, she is entitled to summary judgment on all of Plaintiffs' claims as a matter of law. Plaintiffs have now responded to the Motion for Partial Summary Judgment and failed to present factual disputes sufficient to defeat summary judgment. In footnote 1 of Plaintiffs' Response, they concede that their claim against Franecke under the WARN Act should be dismissed as the WARN Act does not apply to individual employers. ***(Doc. 73, footnote 1).*** In hopes to create a factual dispute on the FLSA and AMWA claims, Plaintiffs have attached nearly identical affidavits of six (6) of the Plaintiffs to their Response. This Court should reject Plaintiffs' attempt to use self-serving and inadmissible statements contained in these affidavits to defeat Defendants' Motion for Partial Summary Judgment as they violate Fed. R. Civ. P. 56. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

As there are no genuine issues of material fact in dispute, Defendants are entitled to summary judgment on all of Plaintiffs' claims against Defendant Franecke as a matter of law. The undisputed facts show that Franecke does not meet the definition of an "employer" under the FLSA and AMWA and therefore cannot be liable to Plaintiffs as a matter of law for violations of the FLSA and AMWA. Additionally, as a matter of law, and as the Plaintiffs have conceded, the WARN Act does not apply to individuals.

## ARGUMENT

A.     **The affidavits submitted by Plaintiffs do not contain admissible information sufficient to overcome summary judgment on the FLSA and AMWA claims against Franecke.**

Plaintiffs submitted to this Court affidavits from six (6) of the Plaintiffs in an attempt to create a factual issue on their FLSA and AMWA claims. These are Affidavits from Plaintiffs Johnathan Yasevich (Doc. 73-1), Pamela Cannon (Doc. 73-2), Ronald Denney (Doc. 73-3), Chanell Williams (Doc. 73-4), Jennifer Long (Doc. 73-5), and Katrina Grimes (Doc. 73-6). Except for a few lines from each of these affidavits, they contain nearly identical statements. It is painfully obvious that these affidavits were prepared in an attempt to carve out a path to creating a factual dispute by alleging facts that would fit the facts of certain prior case law. For example, Plaintiffs claim that Sandra Franecke signed their checks and then cite to *White v. 14051 Manchester, Inc.*, 301 F.R.D. 368, 389 (E.D. Mo. 2014).

These affidavits, however, fail to pass the admissibility requirements set by Fed. R. Civ. P. 56. The affidavits are self-serving and contain statements not based on personal knowledge. They are replete with conclusory statements, hearsay, and irrelevant evidence, none of which is sufficient to create genuine issues of material fact.

An affidavit made in opposition to a motion for summary judgment must be based on personal knowledge. Fed. R. Civ. Pro. 56(c)(4); *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001) (holding that a plaintiff cannot defeat summary judgment by relying upon affidavits that were not based on personal knowledge). An affidavit, additionally, must be based on facts, not conclusory statements or inadmissible hearsay. Fed. R. Civ. Pro. 56(c)(4); *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) (holding that an affidavit containing inadmissible hearsay "may not be used to support or defeat a motion for summary judgment"); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (stating that "when an affidavit contains an out-of-court statement offered to prove the truth of a statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment"); *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 691 (8th Cir. 2001) (holding that a properly supported motion for summary judgment is not defeated by conclusory statements in an affidavit); *Postscript Enter. v. Bridgeton*, 905 F.2d 223, 226 (8th Cir. 1990) (finding that an affidavit with only conclusory allegations was inadequate to demonstrate the existence of genuine issues of material fact.)

A properly supported motion for summary judgment is not defeated by self-serving affidavits. *See Conolly v. Clark,* 457 F.3d 872, 876 (8th Cir. 2006) (citing *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."). Under Rule 56(e), an affidavit filed in support of or opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367.

A plaintiff cannot defeat summary judgment by submitting an affidavit that contradicts earlier, sworn testimony. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983); *see Otto Dental Supply, Inc. v. Derr Corp.*, 2008 WL 410630 (E.D. Ark. Feb. 13, 2008) (stating "the Eighth Circuit has held that where a party attempts to overcome a motion of summary judgment by submitting an affidavit that squarely contradicts the party's earlier deposition testimony, the court may properly grant the motion for summary judgment").

Additionally, declarations of unidentified persons are rarely admitted. *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1003 (3d Cir. 1988). Part of a statement which contains a reiteration of what someone told him is not admissible as an admission by party-opponent if the author of the statement is unknown. *Id.* (citing *Cedeck v. Hamiltonian Federal Savings and Loan Association*, 551 F.2d 1136 (8th Cir. 1977). This is undoubtedly due in part to the heavy burden which rests on the proponent of the evidence to satisfy evidentiary and trustworthiness requirements. *Id.* This is particularly important in analyzing the admissibility of Plaintiffs' Affidavits as they contain numerous references to statements by unidentified "managers." As such, the statements should be disregarded by the Court.

1.      **Affidavit of Johnathan Yasevich.**

The Affidavit of Johnathan Yasevich (Doc. 73-1) does not contain admissible evidence that is sufficient to preclude summary judgment. In Paragraph 10 of his Affidavit, Yasevich states that management decisions at Heritage were made according to the policies and procedures written by Ms. Franecke in her role as CEO. This is a self-serving, conclusory statement not based upon personal knowledge of Yasevich. He provides no first-hand knowledge as to how he knows that to be true. He simply says, "it is my understanding that decisions were subject to existing policies and procedures set up by a higher-up executive." Without some type of corroborating evidence,

other than the mirroring statements of the other Affiant Plaintiffs, Yasevich's statement in Paragraph 10 does not pass Rule 56 requirements. This statement is also inconsistent with his prior deposition testimony. Yasevich was asked in his deposition if Derek Followell had to seek approval from someone above him, whether that be the CEO and Owner or some other position above him, would Yasevich have known about that and he replied, "No, I wouldn't have. And, honestly, that last year being at the position that he was at, I think he had free range to make a lot of decisions… he was traveling from facility-to-facility training managers there and helping directors there, so he gained a position." ***Doc. 66-2, Pgs. 89-91.*** Mr. Yasevich testified upon questioning by his attorney that, "The Dereks were in charge of everything, so like I said, the buck stopped with them." ***Id. at 89.*** The "buck" cannot stop with the directors, and they also have to follow procedure and guidelines put in place by someone else.

His statement in Paragraph 11 is worse. He states that Ms. Franecke's name was always coming up in association with the executive decisions made in running Heritage. This is again a self-serving, conclusory statement lacking any evidence to suggest how Yasevich has personal knowledge of this. Also, it is hearsay. He goes on to say that "everyone knew her name and who she was because our managers were always telling us about "how Ms. Franecke wants things" and "what Ms. Franecke said about such-and-such."" He presumes what everyone knows, which is clearly speculation and not based on personal knowledge. He then makes an obvious hearsay statement that could not possibly be admissible due to its unreliability. This pattern continues throughout these affidavits. He states that some unidentified managers made statements about what Ms. Franecke wanted. The Court is left to speculate as to who these unidentified speakers are, and the Defendants have no way of cross-examining these unidentified individuals or impeaching their statements as Defendants do not know the identity of these supposed managers.

6

In Paragraph 12 he states that Ms. Franecke attended monthly meetings with his directors and the directors would come back from those meetings with additional tips and policy changes that Ms. Franecke wanted. Again, Yasevich makes a self-serving statement that he has no personal knowledge about. He does not testify that he was in these supposed monthly meetings. If he heard about them, then it was from a third party and the third parties' statements would clearly be hearsay. Again, these "directors" are not identified by Yasevich, and the same reliability issues with this hearsay statement persist.

Paragraph 15 contains a statement by Yasevich that his wages were not set by his managers, instead, they were set by the executive office who he *assumed* was Ms. Franecke. Mr. Yasevich's assumptions are not admissible evidence. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367. This is clearly a lack of personal knowledge, and the Court should disregard this statement. He does not state he knows this information, instead it is his assumption. It is nothing more than a conclusory self-serving statement to try and create a factual dispute. Also, this statement by Mr. Yasevich is in direct contradiction with his sworn deposition testimony. A Court should not consider an affidavit contradictory to prior deposition testimony. *See Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 498. In Mr. Yasevich's deposition he is asked, "Who was in charge of deciding your pay rate?" and he replied, "That would be the Followells… when they see us all fit, or if I would go up there and, you know, after a certain amount of time… I know when I was coaching, evaluations didn't come often like it did when you're on the phone, so that was…based on my performance, I would go up to them and present my case for a pay raise, and then, depending on that, they would yay or nay." ***Doc. 66-2, Pg. 84.*** He was asked if he ever had that conversation with Ms. Franecke, to which he replied, "No." ***Id.*** He states in Paragraph 15 of his Affidavit that his managers did not set his pay rate, but clearly that is in direct contradiction to his deposition

statement that the Followells, i.e., Derek Followell and Derek Tutolo, set his pay rate. Also, Yasevich was asked in his deposition if Derek had to seek approval from someone above him, whether that be the CEO and Owner or some other position above him, would Yasevich have known about that and he replied, "No, I wouldn't have. And, honestly, that last year being at the position that he was at, I think he had free range to make a lot of decisions… he was traveling from facility-to-facility training managers there and helping directors there, so he gained a position." ***Id. at Pgs. 89-91.*** Mr. Yasevich testified upon questioning by his attorney that, "The Dereks were in charge of everything, so like I said, the buck stopped with them." ***Id. at P. 89.***

In Paragraph 16 Mr. Yasevich states that he ***assumed*** this because his managers were always referencing Ms. Franecke's approval and input in the decisions they made. Again, Mr. Yasevich's assumptions are not admissible. This is a clear lack of personal knowledge. Additionally, his statement about what his managers were referencing is clearly hearsay and unreliable as the managers are unidentified. He states that his managers handed him his paychecks, but Ms. Franecke signed them. This is a self-serving statement and a desperate attempt to conjure up some fact that could create a factual dispute. Conveniently, Plaintiffs say this, but none of them provide a check to corroborate that Ms. Franecke's signature was on their checks. There is no corroborating evidence for this statement. There is, however, evidence to the contrary. Anita Hill was a former employee of Heritage and was in charge of writing checks for Heritage. ***See Affidavit of Anita Hill, attached as Exhibit A, ¶ 1-3.*** Ms. Hill states that Sandra Franecke never signed any payroll checks. ***Id. at ¶ 4.*** Instead, Glenda Keenihan was in charge of signing checks until 2016 when Ms. Hill took over that role. ***Id. at ¶ 3.***

In Paragraph 17 Mr. Yasevich then admits that he negotiated his pay raise with his directors but ***assumes*** that it was approved by Ms. Franecke. Mr. Yasevich's assumptions are not admissible

as evidence in opposition to summary judgment. The same issue presents itself in Paragraph 18. He states that it was his impression that his managers' actions were subject to procedures handed down from higher up. He does not claim to have actual personal knowledge of this. Even if this were true, however, the statement alone provides no support to Plaintiffs' claim that Ms. Franecke was an employer under the FLSA and AMWA. "Higher up" could be anyone. He does not specifically say Ms. Franecke.

Paragraph 19 of Yasevich's deposition contains inadmissible hearsay. He states that he knows Ms. Franecke was involved in company management because of statements his unidentified managers made.

Paragraph 20 contains a statement by Mr. Yasevich that lacks personal knowledge. He claims that his managers had to get executive approval to take certain actions, but he makes no mention of what those actions are. Additionally, even if this were true, the statement makes no mention of Ms. Franecke being the "executive" who would have given the approval.

Paragraph 21 contains a statement that lacks personal knowledge, is speculative, is conclusory, is self-serving, and contains hearsay. He states that "we all knew who she was and that she owned Heritage because our managers would tell us what she would expect or would not allow." He cannot testify to what others knew. Beyond that, this is another hearsay statement attributed to an unidentified manager with no explanation of when the statement was made. The unreliability of this information makes it completely inadmissible. In Paragraph 22 he explains two specific policies that he attributes to Ms. Franecke, but again this is based off what he alleges his managers told him. It is hearsay from an unidentified individual or individuals and cannot be admissible.

In Paragraph 23 Mr. Yasevich states that he saw Ms. Franecke twice and both times she indicated that things at the company were fine. That statement does not provide any support to the claim that she had any control over hiring and firing Plaintiffs, supervising or controlling the Plaintiffs' work schedules of conditions of employment, whether she determined their rate of pay or method, or that she maintained the Plaintiffs' employment records.

In Paragraph 24 Mr. Yasevich states that Ms. Franecke handed out cruise tickets at a Christmas party, but he does not say that this was in any way considered a bonus or some type of additional compensation. In fact, in his deposition he was asked if the TSRs got bonuses for certain performances and he stated, "There were no bonuses." ***Doc. 66-2, Pg. 22.*** He stated there were no free trips or any kind of incentive for meeting certain goals. ***Id. Pg. 23.*** This fact, assuming it is true, also does not provide any support to the claim that Ms. Franecke had any control over hiring and firing Plaintiffs, supervising or controlling the Plaintiffs' work schedules of conditions of employment, whether she determined their rate of pay or method, or that she maintained the Plaintiffs' employment records.

Mr. Yasevich's Affidavit ends with one last self-serving statement that Ms. Franecke ran the company Facebook page and made most of the posts about Heritage policies and changes. He makes no reference to any specific post or policy change. He attaches no corroborating evidence such as a post to support this claim. In fact, he states she wrote "most" of the posts, but he does not say that she wrote them all. As such, it does not create a material question of fact that prevents summary judgment.

For the foregoing reasons, the majority of Mr. Yasevich's Affidavit should be considered inadmissible or irrelevant and disregarded by the Court for purposes of its ruling on summary judgment.

2.      **Affidavit of Pamela Cannon.**

The Affidavit of Pamela Cannon (Doc. 73-2) also does not contain admissible evidence that is sufficient to preclude summary judgment. It is, in large part, the same as Mr. Yasevich's Affidavit. Paragraphs 10, 11, 12, 15, and 16, of Cannon's Affidavit are objected to for the same reasons those numbered paragraphs are objected to in Yasevich's Affidavit. In paragraph 17 of Mr. Yasevich's affidavit, he adds a paragraph that is not in Cannon's Affidavit. After that, however, her Affidavit again mirrors Mr. Yasevich's. As such, Paragraph 17 of Cannon's Affidavit is objected to for the same reasons for the objection to paragraph 18 of Mr. Yasevich's Affidavit. The same goes for paragraph 18 of Cannon's Affidavit.

Paragraph 19 of Cannon's Affidavit is not contained in Yasevich's Affidavit. Cannon states in Paragraph 19, "I remember that we were told that we wouldn't be paid for the extra time required to switch computers and that my managers specifically said it was being implemented because Ms. Franecke wanted it done that way." This statement is self-serving and backed by no corroborating evidence. It is also hearsay as she states that her managers made this statement. This hearsay statement is completely unreliable as there is no identification of who the speakers are. This is exactly the type of evidence that the Rules aim to protect against. If Plaintiffs were allowed to introduce this type of evidence, summary judgment would never be appropriate as a party could simply say whatever they want, provide zero evidence to corroborate it, and the Court would have to consider it. Luckily, that is not the case.

Paragraph 20 of Cannon's Affidavit is the same as Yasevich's Affidavit and is objected to for the same reasons. In Paragraph 21, Cannon states that her managers would sometimes arrange for competitions to see who could get the most money or calls, but the managers would have to get the rewards for winning approved by Ms. Franecke. This is a self-serving statement with no

corroborating evidence. Cannon would have no personal knowledge that the managers had to get approval from Ms. Franecke unless she was told that by someone else, therefore, this is hearsay. She did not testify that she directly heard Ms. Franecke approve the rewards. Plaintiffs also have provided zero affidavits, depositions, or other statements from Plaintiffs' managers that would support all these statements they are attributing to them. This is also in contradiction to the testimony Mr. Yasevich gave in his deposition. He stated there was no additional compensation for performance. ***Doc. 66-2, Pgs. 22-23.***

Paragraph 22 of Cannon's Affidavit is objected to for the same reasons for objecting to Paragraph 21 of Yasevich's Affidavit. In Paragraph 23 Cannon describes an alleged procedure that her managers told her came from Ms. Franecke. This is another self-serving, uncorroborated, unreliable hearsay statement and should not be considered.

Paragraph 24 contains no factual information that would suggest Ms. Franecke should be considered an employer under the FLSA or AMWA. Paragraph 25 of her Affidavit is objected to for the same reasons for objecting to Paragraph 24 of Yasevich's Affidavit and Paragraph 26 of her Affidavit is objected to for the same reasons for objecting to Paragraph 25 of Yasevich's Affidavit.

For the foregoing reasons, the majority of Ms. Cannon's Affidavit should be considered inadmissible and disregarded by the Court for purposes of its ruling on summary judgment.

**3.     Affidavit of Ronald Denney.**

The Affidavit of Ronald Denney (Doc. 73-3) also does not contain admissible evidence that is sufficient to preclude summary judgment. It also, in large part, is same as Mr. Yasevich's Affidavit. Paragraph 10 of his Affidavit is the same as Mr. Yasevich's, 11 is same as 12, 12 is same as 13, 13 is the same as 14, 14 is the same as 15, 15 is the same as 16, 16 is the same as 18,

17 is the same as 19, and 18 is the same as 20.

In Paragraph 19 Mr. Denney states that his managers had to get executive approval to change call scripts. He does not say, however, that specifically Ms. Franecke approved the call script changes. If Mr. Denney's statement is construed to mean that he believed Ms. Franecke was who approved the script changes, then his statement is self-serving and not based on personal knowledge. He does not claim that he heard Ms. Franecke give approval to change the call scripts. If he is claiming that he was told this by his managers, then this statement is hearsay and completely unreliable as there is no identified manager who would have made this statement to him.

Finally, paragraph 20 of Mr. Denney's Affidavit is the same as paragraph 21 of Mr. Yasevich's and is objected to for the same reasons. As such, the majority of Mr. Denney's Affidavit should be considered inadmissible and disregarded by the Court for purposes of its ruling on summary judgment.

**4.      Affidavit of Chanell Williams.**

The Affidavit of Chanell Williams (Doc. 73-4) also does not contain admissible evidence that is sufficient to preclude summary judgment. Like the other Affidavits submitted by Plaintiffs, Ms. Williams's is in large part the same as Mr. Yasevich's Affidavit. Paragraphs 10, 11, 12, 13, 14, 15, and 16 of her Affidavit are the same as Mr. Yasevich's. Paragraph 17 of her Affidavit is the same as Paragraph 18 of Mr. Yasevich's and 18 is the same as 19.

Paragraph 19 of her Affidavit states that she remembered that if you did not reach your total hours, your pay was reduced and that was a policy implemented by Ms. Franecke. Also, that Ms. Franecke had a policy that if you did not meet a quota, you could be terminated. Ms. Williams goes on to say that her managers are who told her Ms. Franecke wanted it done this way. This is

another example of the Plaintiffs offering this Court self-serving, uncorroborated, and unreliable hearsay statements. Ms. Williams does not say that she was specifically told these policies by Ms. Franecke. Instead, she claims that her managers relayed this information to her. Managers that are completely unidentified. Managers that are not under sworn testimony nor could be cross-examined as their identity is completely unknown. Mr. Yasevich testified in his deposition that TSRs were directly supervised by the "coaches" who kept up with everyone's stats or how many contacts they were making. ***Doc. 66-2, P. 36***. The coach would have 12 TSRs making calls in his or her section and would be in charge of monitoring the calls. ***Id.*** The coaches would also set goals for the TSRs and build morale. ***Id. at P. 37.*** Mr. Yasevich further explained in his deposition that there were TSRs, coaches, then shift managers, and then after them were the directors. ***Id. at 39.*** He stated that above the directors would have been some executive group, but he had only seen them maybe once. ***Id.*** As can be seen by Mr. Yasesvich's deposition testimony, "managers" could mean a lot of different people and it is entirely unclear who Plaintiffs refer to when they say "manager".

Paragraphs 20 and 21 of Ms. Williams's Affidavit are the same as Paragraphs 20 and 21 of Yasevich's Affidavit and the same objections apply. In Paragraph 23 of her affidavit, she states that she saw Ms. Franecke give away prizes at the Christmas party, but like the others, she does not say that this was part of some additional compensation for the Plaintiffs. This paragraph provides no additional support to Plaintiffs' FLSA and AMWA claims. Finally, Paragraph 24 of her Affidavit is objected to for the same reasons as Paragraph 25 of Mr. Yasevich's Affidavit. As such, the majority of Ms. Williams's Affidavit should be considered inadmissible and disregarded by the Court for purposes of its ruling on summary judgment.

5.      **Affidavit of Jennifer Long.**

The Affidavit of Jennifer Long (Doc. 73-5) also does not contain admissible evidence that is sufficient to preclude summary judgment. Her Affidavit is objected to under the same objections as Mr. Yasevich's. Additionally, in Paragraph 10 to her Affidavit she states that she "assumes" that the decisions were made according to the policies and procedures written by Ms. Franecke. Ms. Long's assumptions are inadmissible.

Paragraph 18 of Jennifer Long's Affidavit is not contained in Yasevich's Affidavit. She states that if her managers wanted to fire someone, they had to get executive approval to do so. This statement, however, does not say specifically that the managers had to get approval from Ms. Franecke. Nor does it describe specifically the manager or managers she is referring to or how she knows this information. She does not claim to hear Ms. Franecke giving this instruction. Based on her statement in the paragraph before, it appears she is claiming that she heard this from her managers. As such, it is hearsay from an unidentified speaker and should not be admissible.

Paragraph 20 of Ms. Long's Affidavit states that Ms. Franecke was around the call center a lot right before the business shut down. This statement could be true of a lot of employees of Heritage and does not provide any additional facts that would suggest Ms. Franecke meets the definition of an employer under the FLSA or AMWA.

The majority of Ms. Long's Affidavit should be considered inadmissible, and the Court should disregard those inadmissible statements for purposes of its ruling on summary judgment.

6.      **Affidavit of Katrina Grimes.**

The last Affidavit submitted by the Plaintiffs is the Affidavit of Katrina Grimes (Doc. 73-6) which also does not contain admissible evidence that is sufficient to preclude summary judgment. Her Affidavit is objected to under the same objections as Mr. Yasevich's. She adds an

additional sentence in Paragraph 12 of her Affidavit stating that sometimes Ms. Franecke herself would call her manager to implement changes. This is a self-serving conclusory statement. Assuming these calls did in fact happen, Ms. Grimes has failed to specify what "changes" were being made. Instead, she makes the bro0ad conclusory statement that Ms. Franecke made "changes" on how she felt the business should be run at the time. Again, if this type of testimony is admissible then summary judgment could never be obtained. All a party would need to do to surpass summary judgment would be to make up whatever vague and amorphous event they wish and provide zero corroboration for it. If Ms. Grimes is contending that she learned this information by being told it, then it is inadmissible hearsay.

In Paragraph 18 Ms. Grimes describes an incident where she was demoted and that her managers told her it was a decision made by Ms. Franecke. This is a clear hearsay statement just like all the others that the Plaintiffs have made about what their unidentified managers told them.

In Paragraph 19 Ms. Grimes states that managers had to get approval from Ms. Franecke before they could allow an employee overtime. This is a self-serving statement with no corroboration. Also, it is contrary to the deposition of Mr. Yasevich who stated that the directors of the facility were who set the overtime schedules. ***Doc. 66-2, Pgs. 48-49.*** In his deposition he reads from Heritage's Employee Handbook that states overtime must be authorized by the manager and then the Orientation Training Handbook which states overtime must be approved by the Senior Manager/Director of Sales. ***Id.*** That person being the directors. ***Id.***

Paragraph 22 of her Affidavit also states that Ms. Franecke was around the call center a lot right before the business shut down. This statement could be true of a lot of employees of Heritage and does not provide any additional facts that would suggest Ms. Franecke meets the definition of an employer under the FLSA or AMWA.

The majority of Ms. Grimes's Affidavit should be considered inadmissible, and the Court should disregard those inadmissible statements for purposes of its ruling on summary judgment.

**B.     Defendant Franecke is entitled to Summary Judgment as a matter of law on Plaintiffs' WARN Act claim.**

Plaintiffs' Third Cause of Action (Individual Claims for Violation of the WARN Act) and Fifth Cause of Action (Class Action for Violation of the WARN Act) against Sandra Franecke are ripe for summary judgment. The WARN Act only applies to corporate entities, and not individuals. Plaintiffs have conceded this point. As a matter of law Sandra Franecke is entitled to summary judgment on Plaintiffs' WARN Act claims.

## CONCLUSION

For the foregoing reasons, the Court should determine that there are no genuine issues of material fact that would show separate Defendant Sandra Franecke meets the definition of an "employer" under the FLSA, AMWA, or the WARN Act. As there are no genuine issues of material fact on these claims, Defendant Sandra Franecke is entitled to summary judgment on all of Plaintiffs' claims as a matter of law, along with all other just and proper relief that this Court deems appropriate.

Respectfully submitted,

Charles Darwin "Skip" Davidson; ABN 73026
Nickolas W. Dunn, ABN 2019115
**DAVIDSON LAW FIRM**
724 Garland, Cantrell at State
P.O. Box 1300
Little Rock, AR 72201
(501) 320-5132
Fax: (501) 374-5917
E-mail: skipd@dlf-ar.com
        nick.dunn@dlf-ar.com

**ATTORNEYS FOR DEFENDANTS**

17

## <u>CERTIFICATE OF SERVICE</u>

I, Nickolas W. Dunn, do hereby certify that I have sent via:

      ☐ Hand Delivery
      ☐ Telefax
      ☐ Electronic mail
      ☐ U.S. Mail
      ☐ U.S. Mail, Certified, Return Receipt (as noted below)
      ☐ STATE CM/ECF System
      ☑ Federal Court ECF System (as noted below)

this **27ᵗʰ** day of **June 2023**, a true and complete copy of the forgoing to the following individuals:

**Josh Sanford**
**Daniel Ford**
SANFORD LAW FIRM, PLLC
650 S. Shackleford, Suite 411
Little Rock, Arkansas 72211

                                  Nickolas W. Dunn

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**JOHNATHAN YASEVICH et al.,**                            **PLAINTIFFS**
**Each Individually and on Behalf of**
**All Others Similarly Situated**


v.                                      **CASE NO. No. 3:20-cv-19-KGB**

**THE HERITAGE COMPANY, INC.**                           **DEFENDANTS**
**and SANDRA FRANECKE**

### AFFIDAVIT OF ANITA HILL

I, Anita Hill, first being duly sworn and attest to the following:

1.      I am above the age of 18 and competent to make the statements in this affidavit.

2.      I am familiar with the operations of Heritage and its employees. I worked for Heritage for many years prior to its closing in late 2019.

3.      Glenda Kennihan was in charge of signing checks until 2016 when I took over that role for her. At that time most employees were paid via direct deposit. On or about 2018 that stopped, and all employees were paid by direct deposit.

4.      Sandra Franecke never signed payroll checks. The payroll checks that were issued would have been signed by Glenda Kennihan or me and the checks would have been electronically signed.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Anita Hill

Exhibit A

1

## VERIFICATION

STATE OF ARKANSAS    )
                     )          SS
COUNTY OF Lonoke     )


SUBSCRIBED and SWORN to before me, a Notary Public in and for the State of Arkansas, on this 27th day of June                    , 2023.


NOTARY PUBLIC

My commission expires: Aug 1, 2026

[SEAL]

2