IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| **JOHNATHAN YASEVICH, et al.,**<br>Each Individually and on Behalf<br>of All Others Similarly Situated | **PLAINTIFFS** |
| vs.  No. 3:20-cv-19-KGB | |
| **THE HERITAGE COMPANY, INC.,**<br>and **SANDRA FRANECKE** | **DEFENDANTS** |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs, employees of Defendants The Heritage Company, Inc., and Sandra Franecke ("Defendants"), brought this lawsuit to recover unpaid back wages under the WARN Act, and Telephone Sales Representative Employees ("TSR Employees") brought this lawsuit to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). Plaintiffs and putative opt-in Plaintiffs were employees at call centers operated by Defendants in Arkansas and were victims of a shut down of the call center without the required sixty-day notice under the WARN Act. TSR Plaintiffs also, in addition their WARN Act claims, were not paid for all of the hours they worked over forty in a given workweek, as a result of Defendants failure to pay them for the lag time spent in between being logged into and out of various computer systems, despite the fact that those employees were still performing compensable work.

### I. PLAINTIFFS' FLSA AND AMWA CLAIMS

A subset of Plaintiffs, referred to herein as TSR employees, were employed by Defendant as sales representatives, who utilized telephones and computer systems

provided by Defendants to raise money for Defendants' customers. In the daily course of their work, these TSR employees were required to switch between different computer systems approximately four to five times each day. These switches sometimes required TSR employees to physically move to a different location within the office. Even when that physical move did not occur, however, the switch between systems could often take up to five minutes each time. TSR Plaintiffs were only compensated for the time spent logged into one of the systems and were not compensated for the time spent logging out of one and into the next.

### A. STATUTE OF LIMITATIONS

The statute of limitations under the FLSA is two years unless the employer's violation was "willful," in which case the statute is extended to three years. 29 U.S.C. § 255. Willfulness, in this context, means "the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988). Therefore, the Parties will contest whether Defendants acted willfully when it failed to compensate Plaintiffs for all of the time that they worked. Plaintiffs anticipate testimony from named Plaintiffs and putative opt-ins regarding complaints to management from Defendants regarding the nonpayment of this time. The nature of the violation also suggests willfulness: it is common sense that a company is not permitted to fail to compensate employees for time that it knew the employees were working.

### B. THE DE MINIMIS DOCTRINE

TSR employees anticipate that Plaintiffs' primary defense to their FLSA and AMWA claims will be that the uncompensated time was de minimis, and thus not a violation. This is incorrect. The de minimis doctrine, as outlined by FLSA regulations and interpreted by

the 8th Circuit, holds that Employers are not required to pay employees for "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes." 29 C.F.R. § 785.47.  Factors used to determine whether uncompensated time is de minimis include: "[1] the amount of time spent on the extra work, [2] the practical administrative difficulties of recording additional time, [3] the regularity with which the additional work is performed, and [4] the aggregate amount of compensable time." *Lyons v. ConAgra Foods Packaged Foods, LLC*, 899 F.3d 567 at 584 (8th Cir. 2018)(citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984); 29 C.F.R. § 785.47). Furthermore, "the amount of daily time spent on the additional work" is "[a]n important factor in determining whether a claim is de minimis." *Id.*

The uncompensated time here is not de minimis. Based on the uncontroverted facts alleged by Plaintiffs and to which Plaintiffs expect to testify, Plaintiffs were uncompensated for up to twenty-five minutes each day, which results in almost two and a half hours of time each week. This is more than double the amount of time found de minimis in the *Lyons* case above, and the factors clearly suggest it is not de minimis. For example, and to demonstrate the large aggregate amount of uncompensated time at issue, two and a half hours of time a week, in a fifty-week work year, would result in 125 hours of uncompensated work in a year. Second, there should be no practical difficulties in determining the amount of time, as the log-in and log-out times should be readily available to Defendants, and the gap between the two equates to each instance of uncompensated time. While it will admittedly take some time to determine the amount for each person, the data should be clear and it is not too large of an administrative burden. Finally, the work was performed

with absolute regularity, each day this uncompensated time was accrued approximately four to five times. It was a daily and routine task that went uncompensated, not an aberration or isolated incident.

Based on the above factors, the uncompensated time was not de minimis, and Defendants' primary defense to not compensating TSR employees for such time must fail.

## C. PLAINTIFFS' COMPENSATORY DAMAGES

TSR Plaintiffs have not been granted access, despite timely requesting it during discovery, to the information possessed by Defendants that would lead them to most accurately compute the amount of time uncompensated by Defendants, and thus the amount of compensatory damages owed to TSR employees. As discussed above, with the proper discovery production, this time is clearly ascertainable and calculable. Because Defendants have failed to produce the actual log-in and log-out data for each individual, if it exists, then Plaintiffs should be permitted to estimate the amount of time that went uncompesated as described above, under the *Mt. Clemens* burden-shifting standard.

Using the limited payroll data that Defendants did provide, including tenure and rates of pay, Plaintiffs have calculated their damages utilizing the estimates of their uncompensated log-in/log-out time provided in discovery. These estimates were obtained as part of verified written discovery responses, and Plaintiffs anticipate representative trial testimony matching the estimates used to calculate damages. This results in uncompensated time for TSR Plaintiffs of $346,141.69.

## D. LIQUIDATED DAMAGES

Both the FLSA and the AMWA provide for an award of liquidated damages in an amount equal to the plaintiff's actual damages. 29 U.S.C. § 216(b); A.C.A. § 11-4-

218(a)(1)(B). "An award of liquidated damages is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Jarrett v. ERC Props.*, 211 F.3d 1078, 1083 (8th Cir. 2000) (internal quotation marks omitted). Therefore, Defendant may offer evidence intended to show that it had reasonable grounds to believe that the FLSA allowed it to round time in the manner that it did.

An employer who violates the FLSA carries the burden of proving its claim of good faith and reasonable grounds, and the employer must show that it acted in both objective and subjective good faith, which requires that an employer demonstrate that it "took affirmative steps to ascertain the [FLSA's] requirements but nonetheless violated its provisions." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Liquidated damages are "the norm" where an FLSA violation is found. *Id*.

Defendants will not be able to carry their burden of proving that they acted in both objective and subjective good faith. The overtime provisions of the FLSA are some of the most fundamental and commonly-known protections offered to employees. Similarly to arguments relating to willfulness, it is unlikely that Defendants will be able to prove that it believed in good faith that the law allowed it to fail to compensate employees for time they knew employees were working.

## II.   WARN Act Claims

**A. Liability**

The WARN Act requires employers with 100 or more employees to provide at least 60 days' advance written notice prior to any "mass layoff" or "plant closing." 29 U.S.C. § 2101. Each employee who either will be terminated due to, or is a reasonably foreseeable

result of, the mass layoff or closure must receive the written notice. Id. at § 2102. Failure to provide the notice renders the employer liable to each terminated employee for 60 days' of pay and benefits. 29 U.S.C. § 2104(a)(1). The notice must be disseminated in a method that is reasonably designed to ensure fulfillment of the employers' obligation to give notice to each affected employee. Id. at § 2107; 20 C.F.R. § 639.8.

On or around December 22, 2019, Defendants closed their call centers and sent all employees home. Defendants' employees had no warning that the call centers were closing. In the weeks leading up to the closure, Defendants had been operating as usual, even going so far as to provide incentives for TSRs to make their sales quotas in the form of all-expense paid cruise vacations. On or around December 22, 2019, Defendants called all TSRs currently working a shift into a mandatory meeting in which they informed TSRs that the call centers were closing indefinitely due technological issues following a cyber-attack that had occurred two months prior.

Employees who were not currently working a shift were not informed that the call centers were closing. In fact, some employees arrived for the scheduled shifts on December 23, 2019, only to find the building closed and no manager on site to unlock the doors. Defendants gave employees the impression that they would be allowed to return to their jobs once the technological issues were resolved. In early January, Defendants provided a hot line for employees to call to receive updates on their job statuses. The message on the hot line wished the employees a happy new year as they looked for new employment. This was the employees' first indication that they were terminated and would not be allowed to return to work. They never received written notice of the closure of the call center, and many never received verbal or written notice.

**B. Unforeseen Business Circumstances Exception**

Based on the above facts, Plaintiffs do not expect the initial violation of the WARN Act to be in dispute: Defendants clearly did not notify their employees of a mass layoff with any level of advance notice whatsoever, much less sixty days notice. However, Plaintiffs anticipate that Defendants will use as a defense an exception to the general rule which permits an employer to order a mass layoff before conclusion of the sixty-day notice period if the layoff is "caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). "An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1).

The determination of whether this unforeseen business circumstance exists so as to satisfy the exemption is a question of fact, and Defendants have presented little to no evidence in discovery relating to any such business circumstances, the communication surrounding that circumstance, or the official response thereto.  Plaintiffs were aware that Defendant purportedly suffered a cyber-attack that resultied in the payment of some ransom, but no proof or evidence of such has been offered to date, nor has any proof been offered that such a cyber-attack was a sufficient unforeseen business circumstance to justify total closure of the call center in question.

Furthermore, even if such an unforeseen business circumstance existed, the law still states that an employer "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).  When an employer fails to provide any practicable notice or adequate

explanation, it cannot successfully assert the unforeseeable-circumstances defense. *Geelan v. Mark Travel, Inc.*, 2007 U.S. Dist. LEXIS 106758 at *4 (D. Minn. Jan. 30 2007)(citing *Graphic Communs. Int'l Union, Local 1B v. Bureau of Engraving, Inc.*, No. 01-1770, 2003 U.S. Dist. LEXIS 11731, 2003 WL 21639146, at *6 (D. Minn. July 7, 2003); *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 388-91 (9th Cir. 1994) (discussing adequacy of explanation for shortened notice); *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 256-58 (S.D.N.Y. 1996).

Here the employer failed to provide any practicable notice or adequate explanation, and should not be permitted to successfully assert the unforeseeable-circumstances defense. Despite allegedly having more than two months between the cyber-attack and the closure, employees did not get notice of the closure until verbal warning was giving the day of the closing of the call center to some, but not all of the employees. Other employees never received notice, and only found out their jobs were permanently lost by virtue of a prerecorded telephone message weeks later. This is plainly insufficient notice, and the Defendants should be barred from asserting its unforeseeable-circumstances defense.

### C. Damages

Any employer who orders a plant closing or mass layoff in violation of section 2102 of the WARN Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for back pay for each day of violation at a rate of compensation not less than the higher of the average regular rate received by such employee during the last 3 years of the employee's employment or the final regular rate received by such employee. 29 U.S.C. § 2104(a). The WARN Act also provides for the payment of benefits to aggrieved employees and a reasonable attorneys' fee and costs. Id.

Utilizing Defendants' *own estimation* of the damages that would be owed to WARN Act employees, which was then verified for correctness using hire dates, pay rates and the damages appropriate for the full 60-day lack of notice, Defendants are liable to Plaintiffs for $376,574.92 in compensatory damages.

### D. Individual Liability of Separate Defendant Sandra Franecke

There is a pending Motion for Summary Judgment on this issue that extensively briefs this issue for the Court's consideration. Plaintiffs believe that there is, at the very minimum, a genuine issue of material fact as to the individual liability of Sandra Franecke as an individual employer of Plaintiffsn this action.

### III. CONCLUSION

The evidence at trial will demonstrate that Plaintiffs and opt-in Plaintiffs were the aggrieved victims of Defendants' failure to provide the statutorily required amount of notice prior to a mass layoff, and that a subset of those employees (TSR employees) were also victims of Defendants' failure to properly compensate its employees for all overtime worked. Plaintiffs will provide proof of the amount owed to each of these classes of individuals, and believe that Defendants will fall short with any defenses that they have the burden to prove. A trial, utilizing representative testimony considering the large number of Plaintiffs, should take approximately 2-3 days.

Respectfully submitted,

**JOHNATHAN YASEVICH, et al., Each individually and on Behalf of All Others Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com