IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JOHNATHAN YASEVICH, et al.,**   **PLAINTIFFS**
Each Individually and on Behalf
of All Others Similarly Situated

vs.                                No. 3:20-cv-19-KGB

**THE HERITAGE COMPANY, INC.,**   **DEFENDANTS**
and SANDRA FRANECKE

## PLAINTIFFS' PRETRIAL DISCLOSURE SHEET

Plaintiffs Johnathan Yasevich, et al., individually and on behalf of all others similarly situated, by and through their attorneys of the Sanford Law Firm, PLLC, and for their Pretrial Disclosure Sheet, state and allege as follows:

**1.    Identity of the party submitting information.**

Plaintiffs Johnathan Yasevich, et al., by and through their attorneys Daniel Ford and Josh Sanford of the Sanford Law Firm, PLLC.

**2.    Names, addresses, and telephone numbers of all counsel for the parties.**

Daniel Ford and Josh Sanford of the Sanford Law Firm, PLLC, Kirkpatrick Plaza, 10800 Financial Centre Parkway, Suite 510, Little Rock, Arkansas 72211, Phone: (501) 221-0088, Facsimile: 888-787-2040, Email: daniel@sanfordlawfirm.com; josh@sanfordlawfirm.com.

**3.     A brief summary of the claims and relief sought.**

Defendants violated the Fair Labor Standards Act ("FLSA"), the Arkansas Minimum Wage Act ("AMWA") and the WARN Act by failing to pay Plaintiffs lawful overtime wages, and by failing to provide timely notice a closure of its business.  Plaintiffs seek the following relief:

A.     A declaratory judgment that Defendant's practices alleged herein violate the FLSA, the AMWA, and their related and implementing regulations;

B.     Judgment for damages for all unpaid minimum wage and overtime compensation under the FLSA, the AMWA, and their related and implementing regulations;

C.     Judgment for liquidated damages pursuant to the FLSA, the AMWA, and their related and implementing regulations;

D.     An order directing Defendants to pay Plaintiffs and the opt-ins prejudgment interest, reasonable attorney's fees and all costs connected with this action;

E.     Judgment for damages under the WARN Act, which provides that Plaintiffs who are not given a 60-day notice of a closing or mass layoff are to be paid backpay for each day less than the required amount of notice, at their regular rate of pay over the last three years or their final regular rate of pay, whichever is higher.

F.     Such other and further relief as this Court may deem necessary, just and proper.

**4.     Prospects for settlement.**

The Parties are currently working to schedule a second settlement conference prior to trial.

**5.     The basis for jurisdiction and objections to jurisdiction.**

Plaintiffs seek relief under the FLSA, 29 U.S.C. § 201 *et seq*. and 29 U.S.C. §2101, *et seq.* Therefore, this Court has federal question jurisdiction of this action under 28 U.S.C. § 1331.  This lawsuit also alleges causes of action under the AMWA, which arise out of the same set of operative facts as the FLSA causes of action, and which would be expected to be tried with the federal claims in a single judicial proceeding.  Accordingly, this Court has supplemental jurisdiction over the additional AMWA claims pursuant to 28 U.S.C. § 1367(a). The acts complained of in Plaintiffs' Complaint were committed and had their principal effect within the Central Division of the Eastern District. Therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391. Plaintiffs know of no objections to jurisdiction or venue.

**6.     A list of pending motions.**

Plaintiffs' Motion To Set Aside Joint Stipulation of Partial Dismissal Without Prejudice and Order of Dismissal Relating Thereto (ECF No. 70); Defendants' Motion for Partial Summary Judgment (ECF No. 66); Defendants' Motion to Compel Discovery (ECF No. 63); and Defendants' Motion for Continuance (ECF No. 81), which is unopposed.

**7.     A concise summary of the facts.**

Defendants operated call centers throughout Arkansas, for which purpose they employed more than 100 individuals, many of whom had the job title of Telephone Sales Representative ("TSR").  On or about December 20, 2019, without providing any advance notice whatsoever to its employees, Defendants shut down the company in its entirety and ended the employment of all employees, including but not limited to TSR employees. The legally-required 60-day notice was not given of the impending shut down. No exigency or

emergency was cited in communications to employees regarding the closing of the call center.

Prior to this closing, the call center employed TSR employees to solicit on the company's clients' behalf. These employees were required to log into multiple computer systems to perform their duties as TSRs. TSR employees were only paid for the time in which they were logged into one of the systems, and not for any of the time it took to switch between systems, despite the fact that switching between systems was a required job duty. TSR employees had to switch systems approximately four to five times per day, and each time took up to five minutes to switch, sometimes including physically moving to a different portion of the office. TSR employees were not compensated for this time, which often was time in excess of forty (40) hours in a given week, and thus should have been paid at 1.5 times TSR employees' regular rate of pay.

**All proposed stipulations.**

A. Jurisdiction and venue are proper in this Court;

B. Defendants The Heritage Company, Inc., was an "employer" within the meaning of the Fair Labor Standards Act, the Arkansas Minimum Wage Act, and the WARN Act;

C. Defendants had employees that handle, sell or otherwise work with goods or materials that have been moved in or produced for commerce for each year between 2016 and 2020;

D. Defendants maintained at least two employees during each year between 2016 and 2020 that handled goods, including the materials used to accomplish its sales

purposes such as telephones and computer systems, that traveled through interstate commerce;

  E. Defendants had more than four employees for each year between 2017 and 2020;

  F. TSR Plaintiffs and the putative opt-in plaintiffs worked for Defendants as hourly-paid employees;

  G. TSR Plaintiffs and putative opt-in plaintiffs worked more than forty hours per week during at least some workweeks during the statutory period;

  H. TSR Plaintiffs and the putative opt-ins' job duties included, but were not necessarily limited to, utilizing telephones and computer systems to make sales calls to individuals on behalf of the company's clients, including logging into multiple computer systems;

  I. Defendants had a policy of not paying its TSR employees for time spent not logged into a computer system;

  J. Defendants did not pay Plaintiffs or the putative opt-ins any overtime premiums for any hours that were not spent logged into a computer system, even if they were working during that time;

  K. Defendants shut down all business at its call centers on or around December 20, 2019;

  L. No advance notice was provided to employees, either TSR employees or otherwise, of this shut down.

M.  Defendants had known for more than two months prior to the shut down of any hacking or "cyber attack" that allegedly occurred, but still did not provide any notice of a possible or certain shut down.

**8.  The issues of fact expected to be contested.**

A.  Whether Defendants failed to pay Plaintiff and the opt-ins lawful overtime premiums for all hours worked beyond forty hours each week;

B.  Whether Defendant had both objective and subjective good faith in failing to make proper payments under the law;

C.  The amount of uncompensated time between logging in and out by TSR Employees;

D.  Whether Defendants had any exigent or emergency situations that played a role in a shut down;

**9.  The issues of law expected to be contested.**

A.  Whether Defendant lacked good faith;

B.  Whether Defendants willfully violated the FLSA;

C.  Whether Defendants exigent or emergency circumstances alleged to have occurred meet an exception under the WARN Act to providing notice to employees affected by the shut down;

D.  Plaintiffs' damages under the WARN Act, as calculated by the amount of notice given and regular rate of pay of affected employees;

E.  Whether Sandra Franecke is liable as an individual under either the FLSA, AMWA or WARN Act.

**10.     A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

Plaintiffs expect to offer:

A.   Certain but incomplete payroll documents produced by Defendants;

B.   Payroll policies;

C.   Communications made by Separate Defendant Sandra Franecke relating to call center shutdowns;

D.   Written communications relating to the enforcement of certain pay policies;

E.   A spreadsheet detailing Plaintiffs' damages under the FLSA, AMWA and WARN Act.

**11.     The names, addresses and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call. Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

Plaintiffs expect to call the following individuals as witnesses:

A.   A representative portion of Plaintiffs and putative opt-in Plaintiffs who have filed a Consent to Join or are Named Plaintiffs in the action;

B.   Individual Defendant Sandra Franecke.

Plaintiffs may call:

A. Any and all witnesses identified by or called by Defendant at any point in this case; and

B. Any and all witnesses in the courtroom attending the trial at the request of, or on behalf of, Defendant

C. Additional Plaintiffs or putative opt-in Plaintiffs beyond a representative sampling, if necessary to prove certain facts.

**12. The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.**

The Parties have ostensibly completed discovery, but Defendants have filed an opposed Motion to Compel Discovery.

**13. An estimate of the length of trial and suggestions for expediting disposition of the action.**

The trial can be accomplished in 2-3 days, using representative testimony.

Respectfully submitted,

**PLAINTIFFS JOHNATHAN YASEVICH, et al., Each individually and on Behalf of All Others Similarly Situated**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com