## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JOHNATHAN YASEVICH,** *et al.*
                                                              **PLAINTIFFS**

**v.**                              **Case No. 3:20-cv-00019 KGB**

**THE HERITAGE COMPANY, INC.,** *et al.*                    **DEFENDANTS**

### OPINION AND ORDER

Plaintiff Johnathan Yasevich brings this action individually and on behalf of all others similarly situated against defendants Heritage Company ("Heritage") and Sandra Franecke (collectively "Heritage defendants") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* ("AMWA"), and the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* ("WARN Act").

Before the Court is a motion to compel discovery filed by Heritage defendants (Dkt. No. 63). Based on informal communication with all counsel, the Court understands that Mr. Yasevich stated in response that plaintiffs have no further information to provide in response to Heritage defendants' discovery requests that are the subject of the motion to compel. Heritage defendants state that they will hold plaintiffs to that response at trial and agree the pending motion to compel may be denied as moot. For these reasons, the Court denies Heritage defendants' motion to compel as moot (Dkt. No. 63).

Also before the Court is Heritage defendants' motion for partial summary judgment, which requests that the Court dismiss plaintiffs' claims against Ms. Franecke on the basis that: (1) Ms. Franecke "does not meet the definition of an 'employer'" under the FLSA or AMWA and (2) the WARN Act does not apply to individuals (Dkt. Nos. 66; 68, at 2). Plaintiffs responded in

opposition (Dkt. No. 73).  Heritage defendants filed a reply (Dkt. No. 78).  For the foregoing reasons, the Court grants in-part and denies in-part Heritage defendants' motion for partial summary judgment (Dkt. No. 66).

## I.      Factual Background

The Court draws the following facts from Heritage defendants' statement of undisputed facts and plaintiffs' response to Heritage defendants' statement of undisputed facts (Dkt. Nos. 67; 74).  Due to the brevity of Heritage defendants' statement of undisputed facts, the Court makes reference to other record evidence where necessary.

The parties agree that Heritage is a domestic for-profit corporation which operated call centers throughout Arkansas during the time relevant to this lawsuit, that Ms. Franecke served as Heritage's part-owner, and that plaintiffs are former employees of Heritage (Dkt. Nos. 5, ¶¶ 8, 19; 10, ¶¶ 8, 19; 67, ¶¶ 1–2; 74, ¶¶ 1–2).  Based upon the record evidence before the Court, the parties' agreement appears to end there, with their disagreements ranging from:  (1) the extent of Ms. Franecke's control or duties associated with the hiring and firing of employees, (2) Ms. Franecke's ability to supervise and control plaintiffs' work schedules or conditions of employment, (3) Ms. Franecke's involvement in plaintiffs' rate and method of pay, and (4) whether Ms. Franecke maintained plaintiffs' employment records (Dkt. Nos. 67, ¶¶ 3–8; 74, ¶¶ 3–8).

As it relates to Ms. Franecke's control over and duties related to hiring and firing employees, Ms. Franecke maintains that she had "no direct control or duties associated with hiring and firing Plaintiffs" (Dkt. Nos. 67, ¶ 3).  While both parties agree that "Heritage had supervisors and human resource representatives that oversaw hiring and firing of employees within the same roles as Plaintiffs," plaintiffs seek to clarify these statements and maintain that "supervisors hired and fired pursuant to policies set by Heritage's executives, specifically Ms. Franecke" (Dkt. Nos.

2

67, ¶ 4; 74, ¶ 4).  Plaintiffs also disagree that Ms. Franecke had "no direct control or duties associated with hiring and firing," explaining that "while Plaintiffs were hired by Defendants' human resources department, all hiring and firing was pursuant to policies and criteria that was determined by Defendants' executives, specifically Ms. Franecke" (Dkt. No. 74, ¶ 3).  Plaintiffs further argue that Ms. Franecke set policies laying out the grounds for termination, required executive approval before an employee was terminated, and exercised control of employee positions by creating and eliminating certain positions (*Id.*, ¶¶ 3–4).

The parties disagree about the extent to which Ms. Franecke supervised or controlled plaintiffs' work schedules and conditions of employment (Dkt. Nos. 67, ¶¶ 4–5; 74, ¶¶ 4–5).  Ms. Franecke maintains she "did not supervise or control work schedules or conditions of employment" (Dkt. No. 67, ¶ 5).  Plaintiffs argue that "Ms. Franecke set policies that affected Plaintiffs' work schedules and conditions of employment," citing a declaration by Mr. Yasevich for the proposition that "Ms. Franecke implemented a policy requiring breaks to last only 10 minutes and prohibiting [Heritage employees] from having food at their stations" (Dkt. No. 74, ¶ 5; *see also* Dkt. No. 73-1, ¶ 22).  Plaintiffs, pointing to another declaration, maintain that "Ms. Franecke set the call scripts Plaintiffs used to perform their job duties and set the policies determining how to place and end calls" (Dkt. No. 74, ¶ 5; *see also* Dkt. No. 73-3, ¶ 19).  Plaintiffs also maintain that "Ms. Franecke was personally responsible for the policy stating that Plaintiffs would not be paid for their time spent in switching computers and computer programs" and that "Ms. Franecke exerted control over Plaintiffs' schedules by implementing a policy that required site managers to obtain approval on any overtime" (Dkt. No. 74, ¶ 5; *see also* Dkt. Nos. 73-2, ¶ 23; 73-6, ¶ 20).

The parties dispute whether Ms. Franecke handled plaintiffs' rate of pay and method of payment and dispute whether she maintained plaintiffs' employment records (Dkt. Nos. 67, ¶¶ 7–

8; 74, ¶¶ 7–8).  Ms. Franecke states that she neither handled plaintiffs' rates of pay and payment method, nor maintained plaintiffs' employment records (Dkt. No. 67, ¶¶ 7–8).  Plaintiffs deny this assertion, arguing that "[a]s owner and CEO, Ms. Franecke set policies that determined Plaintiffs' rates and methods of pay" (Dkt. No. 74, ¶ 7).  Plaintiffs also argue that Ms. Franecke signed their paychecks and wrote protocols, specifically the employee handbook, pertaining to hiring, firing, and training employees (*Id.*, ¶ 8).

## II.    Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to the entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable fact finder to return a verdict for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323; *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Matsushita*, 475 U.S. at 586-87). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.    Evidentiary Objections

Plaintiffs attach as exhibits to their response to the motion for partial summary judgment the sworn declarations of Johnathan Yasevich, Pamela Cannon, Ronald Denney, Chanell Williams, Jennifer Long, and Katrina Grimes (Dkt. Nos. 73; 73-1; 73-2; 73-3; 73-4; 73-5; 73-6). Heritage defendants filed a reply to plaintiffs' response in which Heritage defendants make several evidentiary objections to statements made in these declarations (Dkt. Nos. 78, at 5–16). Among other objections, Heritage maintains that "a majority" of the testimony contained in these declarations is inadmissible because the testimony constitutes self-serving statements made without personal knowledge and, in some circumstances, inadmissible hearsay (*Id.*).

At the summary judgment stage, the Court may discount a party's self-serving affidavit or deposition testimony as a matter of law where it clearly contradicts the party's earlier testimony under oath and where the party offers no explanation for the inconsistencies. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010); *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1126 (8th Cir. 2008).

Additionally, "Federal Rule of Evidence 602 requires that a witness have personal knowledge of the matters about which he or she testifies, except in the case of expert opinions." *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003). "Federal Rule of Evidence 701 allows lay opinion that 'is limited to those opinions or inferences which are (a) rationally based on the

perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" *Id.* "'While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the Court may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience.'" *Id.* (citing *United States v. Oliver,* 908 F.2d 260, 264 (8th Cir. 1990)). The general application of Federal Rule of Evidence 701 "indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception." *Espino*, 317 F.3d at 797.

A party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay—out of court statements offered as evidence to prove the truth of the matter asserted. *United States v. Lamm*, 5 F.4th 942, 948 (8th Cir. 2021); *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013); *see also* Fed. R. Evid. 801, 802, 803.

The Court does not make evidentiary determinations at this stage of the proceeding; instead, the Court determines what evidence to consider at the summary judgement stage based on whether that evidence could be presented in an admissible form at trial. Fed. R. Civ. P 56(c)(2); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). The Court applies this standard laid out in Federal Rule of Civil Procedure 56(c)(2) when examining Heritage defendants' objections, mindful that the Court's function at this stage of the litigation is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### A.    Declaration Of Johnathan Yasevich

Heritage defendants object first to Mr. Yasevich's declaration (Dkt. No. 78, at 5–10). Heritage defendants repeat many of the same objections to the subsequent declarations of Ms. Cannon, Mr. Denney, Ms. Williams, Ms. Long, and Ms. Grimes, referring back to their objections to Mr. Yasevich's declaration throughout their reply (*Id.*, at 10–16).  The Court notes at the outset of its analysis related to the admissibility of Mr. Yasevich's statements that Ms. Cannon, Mr. Denney, Ms. Williams, Ms. Long, and Ms. Grimes' declarations contain similar—often identical—testimony to that of Mr. Yasevich (*Compare* Dkt. No. 73-1, at ¶ 15 *with* Dkt. Nos. 73-2, ¶ 15; 73-3, ¶ 14; 73-4, ¶ 15; 73-5, ¶ 13; 73-6, ¶ 14).  Given the similarities between the statements to which Heritage defendants object, the Court refers back to its analysis of Mr. Yasevich's testimony when making admissibility determinations regarding the testimony of Ms. Cannon, Mr. Denney, Ms. Williams, Ms. Long, and Ms. Grimes.

### 1.    Paragraph 10

Paragraph 10 of Mr. Yasevich's declaration states:

> Even though these managers ran the daily operation of the call centers, it was my understanding that their decisions were subject to existing policies and procedures set up by a higher-up executive.  Specifically, the decisions were made according to the policies and procedures written by Ms. Franecke in her role as CEO.

(Dkt. No. 73-1, ¶ 10).

Heritage defendants argue that Mr. Yasevich's declaration is a "a self-serving, conclusory statement," criticizing the fact that "Yasevich states that management decisions at Heritage were made according to the policies and procedures written by Ms. Franecke in her role as CEO," without any "personal knowledge" of Ms. Franecke's personal involvement in writing Heritage's policies and procedures (Dkt. No. 78, at 5).  Heritage defendants argue that Mr. Yasevich must

base his testimony on "some type of corroborating evidence" other than his general "understanding" (*Id.*, at 5–6).

Heritage defendants also characterize Paragraph 10 of Mr. Yasevich's declaration as "inconsistent with his prior deposition testimony" (*Id.*, at 6).  In his deposition, Mr. Yasevich is asked to describe the level of authority held by Derrick Followell and Derek Tutolo, two individuals Mr. Yasevich had previously described as the "directors" and "leaders of our building" (Dkt. No. 66-2, at 28, 90).  Heritage defendants argue that Mr. Yasevich's representation that "decisions were made according to the policies and procedures written by Ms. Franecke" contradicts Mr. Yasevich's previous deposition testimony, particularly his statements that:  (1) he "wouldn't have" known about the process by which Mr. Followell and Mr. Tutolo sought approval, (2) he believed that the "buck stopped with [Mr. Followell and Mr. Tutolo]," and (3) following the departure of Mr. Followell, Mr. Tutolo "had free range to make a lot of decisions" (Dkt. Nos. 66-2, at 90; 73-1, ¶ 10; 78, at 6).  Heritage defendants maintain that the "'buck' cannot stop with the directors . . . [if] they also have to follow procedure[s] and guidelines put in place by someone else" (Dkt. No. 78, at 6).

The Court overrules Heritage defendants' objection related to paragraph 10 and Mr. Yasevich's personal knowledge.  Mr. Yasevich does not lack personal knowledge to state his "understanding" as the statement is a relevant characterization of Mr. Yasevich's perception of the Heritage decision-making hierarchy informed by his generalized knowledge and personal experience as a Heritage employee.  *See generally Espino*, 317 F.3d at 797.

The Court also overrules Heritage defendants' objection related to the alleged inconsistency between Mr. Yasevich's declaration and deposition testimony.  While paragraph 10 of Mr. Yasevich's declaration may not be a model of specificity, Mr. Yasevich indicated during

his deposition that he was aware of Heritage's "procedures," which the Court believes to be sufficient, at this point in the litigation, to base his "understanding" of the role of higher-level executives like Ms. Franecke in creating those procedures (Dkt. No. 66-2, at 48 (confirming that to Mr. Yasevich the orientation training books "look[ed] familiar" and though he did not "really remember reading it," he did recall "getting on the computers and going through procedures"); Dkt. No. 73-1, ¶ 10).

Additionally, the Court overrules Heritage defendants' objection to Mr. Yasevich's statement related to Heritage's directors making their decisions based on "policies and procedures written by Ms. Franecke in her role as CEO" (Dkt. No. 78, at 5–6).   Contrary to Heritage defendants' contentions, the statements in paragraph 10 and those made by Mr. Yasevich at his deposition can both be true.  Managers can operate within the limits of procedures and guidelines set by their superiors while also exercising considerable autonomy.

### 2.        Paragraph 11

Paragraph 11 of Mr. Yasevich's declaration reads as follows:

11.     Ms. Franecke's name was always coming up in association with the executive decisions made in running Heritage.  Everyone knew her name and who she was because our managers were always telling us about "how Ms. Franecke wants things" and "what Ms. Franecke said about such-and-such."

(Dkt. No. 73-1, ¶ 11).   Heritage defendants characterize this statement as a "self-serving, conclusory statement lacking any evidence to suggest how Yasevich has personal knowledge of this" and maintain that the statement is hearsay (Dkt. No. 78, at 6).  Heritage defendants argue that Mr. Yasevich:

presumes what everyone knows, which is clearly speculation and not based on personal knowledge.  He then makes an obvious hearsay statement that could not possibly be admissible due to its unreliability . . . .  He states that some unidentified managers made statements about what Ms. Franecke wanted.  The Court is left to speculate as to who these unidentified speakers are, and the Defendants have no

way of cross-examining these unidentified individuals or impeaching their statements as Defendants do not know the identity of these supposed managers.

(*Id.*).

The Court overrules Heritage's objection to paragraph 11.  The Court understands this testimony to state, based on Mr. Yasevich's experience and perception, that it was common knowledge among Heritage staff that Ms. Franecke occupied some executive level position at Heritage with the ability to direct company policy.

The Court also overrules Heritage's objection to paragraph 11 on the basis that it is hearsay. Federal Rule of Evidence 801(d)(2)(D) excludes from the hearsay definition those statements offered against an opposing party when that statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D); *see also Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (explaining in the context of an alleged age-based termination suit that agents under 801(d)(2)(D) need not be "decision makers" but that "[s]ignificant involvement, either as [an] advisor or other participant in a process leading to a challenged decision," may be sufficient to establish agency); 30B Charles Alan Wright et al., Federal Practice and Procedure §6676 (3d ed. 2023) (stating that in making an agency determination under Federal Rule of Evidence 801(d)(2)(D), "courts engage in a common-sense inquiry into agency given the specific facts presented").

The fact that Mr. Yasevich does not identify these managers, and Heritage defendants lack the opportunity to cross-examine, does not change the Court's analysis.  The Court need not speculate as to the identity of these managers because that is not the question before the Court. The threshold issue is whether Mr. Yasevich's declaration could be presented in an admissible form at trial.  At this stage in the litigation, on the record before it, the Court concludes that the representations made by Mr. Yasevich could be introduced in an admissible form at trial pursuant

to Federal Rule of Evidence 801(d)(2)(D).  *Yates*, 267 F.3d at 802 (citing *Bevan v. Honeywell, Inc.*, 118 F.3d 603 (8th Cir.1997), for the proposition that a comment is admissible under Rule 801(d)(2)(D) when each layer of the out-of-court statement was a statement of a party opponent).

### 3.      Paragraph 12

Mr. Yasevich states in paragraph 12 of his declaration:  "Ms. Franecke attended monthly meetings with my directors, and the directors would always come back from these meetings with additional tips or policy changes that they said Ms. Franecke wanted" (Dkt. No. 73-1, ¶ 12). Heritage defendants argue that this statement is "self-serving" and made devoid of "personal knowledge" (Dkt. No. 78, at 7).  The Court overrules Heritage defendants' objections to paragraph 12.  *See* Fed. R. Evid. 602, 701, 801(d)(2)(D).

### 4.      Paragraphs 15, 16, 17, And 18

The Court next analyzes together Heritage defendants' objections to paragraphs 15, 16, 17, and 18, as each statement builds on the previous (Dkt. No. 78, 7–9).  Paragraphs 15 through 18 state:

> 15.     While my managers in Jonesboro made decisions about where and when I worked, they did not set my pay nor sign my pay checks.  My wages were set by the executive office, who I assumed was Ms. Franecke.
>
> 16.     I assumed this because my managers were always referencing Ms. Franecke's approval and input in the decisions they made.  Also, even though my managers handed me my paychecks, Ms. Franecke signed them.
>
> 17.     I negotiated a higher hourly wage with my directors when I was hired on, but that increase had to be approved before they could agree to it.  I assume it was approved by Ms. Franecke.
>
> 18.     While my managers acted with a lot of autonomy, it was my impression that most of their actions were subject to procedures handed down from higher up.

(Dkt. No. 73-1, ¶¶ 15–18).

Heritage defendants object to the inclusion of paragraph 15 of Mr. Yasevich's testimony because it contains "a statement by Yasevich that his wages were not set by his managers, instead, they were set by the executive office who he assumed was Ms. Franecke" (Dkt. No. 78, at 7). Heritage defendants argue that Mr. Yasevich's assumptions are not based on personal knowledge, are "not admissible evidence," and directly contradict his prior deposition testimony (*Id.*, at 7–8).

Heritage defendants object to paragraphs 16, 17, and 18 for similar reasons, contending that Mr. Yasevich lacks personal knowledge, bases his statements on assumptions, and relies upon hearsay (*Id.*, at 8–9). For example, Heritage defendants argue that paragraph 16 "is clearly hearsay and unreliable as the managers are unidentified. He states that his managers handed him his paychecks, but Ms. Franecke signed them" (*Id.*, at 8). Heritage defendants note that Mr. Yasevich fails to provide physical evidence to corroborate his contention that Ms. Franecke's signature appeared on his pay checks (*Id.*). Heritage defendants then offer the declaration of Anita Hill—a former Heritage employee "in charge of writing checks"— as "evidence to the contrary" (Dkt. Nos. 78, at 8; 78-1, ¶ 4). Ms. Hill swears that "Sandra Franecke never signed payroll checks . . . [and that] payroll checks that were issued would have been signed by Genda Kennihan or me" (Dkt. No. 78-1, ¶ 4). Heritage defendants argue that paragraph 17 is inadmissible as it is based on an assumption, and they question the relevance of paragraph 18, given its vague reference to "Higher up[s]" (Dkt. No. 78, at 9).

Were it not for the inconsistencies between Mr. Yasevich's deposition testimony and the representations made in his declaration, the Court would overrule Heritage defendants' objections to paragraphs 15 through 18. The Court would also overrule Heritage  defendants' objections related to the relevance of Mr. Yasevich's statements found at paragraph 18. However, Heritage defendants point out that paragraph 15 "is in direct contradiction with [Mr. Yasevich's] sworn

deposition testimony" (Dkt. No. 78, at 7).  The Court understands Heritage defendants' objection to paragraph 15 to extend also to paragraphs 16, 17, and 18, as the statements subsequent to paragraph 15 relate closely and build upon each other (Dkt. No. 78, at 7–9).

When asked during his deposition to state the person or persons in charge of deciding his pay rate, Mr. Yasevich responded:

> That would be the Followells . . .  I would go up to them and present my case for a pay raise, and then, depending on that, they would yay or nay.  Then when I got back on the phones, it was, you know, evaluation time that they would do the pay raise.

(Dkt. No. 66-2, at 85).[1]  Mr. Yasevich indicated that he never had a conversation related to his pay rate with Ms. Franecke (*Id.*).  Mr. Yasevich also represented that he was unaware whether his managers "had to seek approval" from someone at the executive level before setting pay rates (*Id.*, at 90).

At the summary judgment stage, the Court may discount a party's self-serving affidavit or deposition testimony as a matter of law where it clearly contradicts the party's earlier testimony under oath and where the party offers no explanation for the inconsistencies.  *Frevert*, 614 F.3d at 474; *Roberts*, 528 F.3d at 1126.  Given the discrepancies between Mr. Yasevich's deposition testimony and paragraphs 15 through 17 of his declaration, the Court sustains Heritage defendants' objections related to the declaration and disregards the representations made in paragraphs 15 through 17 of Mr. Yasevich's declaration for the purpose of considering Heritage defendants' motion for partial summary judgment.

---

[1]  The record before the Court is ambiguous as to whom the term "the Followells" refers. Regardless, the relevant aspect to the Court's evidentiary determination is that Mr. Yasevich testified that a Heritage manager—not Ms. Franecke—decided his rate of pay (*Compare* Dkt. No. 66-2, at 85 *with* Dkt. No. 73-1, ¶ 15).

Notwithstanding its decision to sustain the objections to paragraphs 15 through 17 of Mr. Yasevich's declaration, the Court overrules Heritage defendants' objections related to paragraph 18. Reading paragraph 18 in conjunction with Mr. Yasevich's deposition testimony does not render either void by contradiction.

### 5.   Paragraph 19

Heritage defendants object to the Court's consideration of paragraph 19 of Mr. Yasevich's declaration, calling it inadmissible hearsay (Dkt. No. 78, at 9). Paragraph 19 states: "I know that Ms. Franecke was involved in company management because whenever my managers would have meetings with the executives, they always came back and implemented changes that they attributed to Ms. Franecke" (Dkt. No. 73-1, ¶ 19).

The Court overrules Heritage defendants' objections to paragraph 19 on the basis that Federal Rule of Evidence 801(d)(2)(D) excludes from the hearsay definition those statements offered against an opposing party when that statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *See also Yates*, 267 F.3d at 802.

### 6.   Paragraph 20

Heritage defendants claim that Mr. Yasevich lacks personal knowledge for his statement in paragraph 20 (Dkt. No. 78, at 9). Mr. Yasevich states in paragraph 20: "My managers had been working for Heritage for a long time and were familiar enough with the policies and procedures of the company that they didn't have to get approval for everything, but there were still things that required executive approval" (Dkt. No. 73-1, ¶ 20). The Court understands Heritage defendants' objections to be: (1) Mr. Yasevich's alleged lack of personal knowledge, (2) the relevancy of the statement given that it does not state precisely what "things" required approval, and (3) failing to

mention Ms. Franecke as the "executive" from whom approval would have been required (Dkt. No. 78, at 9).

The Court overrules these objections.  Having been an employee from October 2013 to December 2019, the Court understands paragraph 20 of Mr. Yasevich's declaration to state that his managers "had been working for Heritage for a long time," based on his personal knowledge gained through his employment experience (Dkt. Nos. 66-2, at 12–13; 73-1, ¶ 20).  *See generally* Fed. R. Evid. 602, 701, 801(d)(2)(D).  Furthermore, the Court finds that the testimony could be presented at trial in an admissible form and finds it relevant to understanding Heritage's organizational structure.

### 7.      Paragraphs 21 And 22

Mr. Yasevich states the following in paragraphs 21 and 22:

21.      Ms. Franecke was hardly ever physically present at the call center, but we all knew who she was and that she owned Heritage because our managers would tell us what she would or would not allow.

22.      For example, my managers created a smoking area and implemented a 10-minute break policy pursuant to Ms. Franecke's instructions.  It was also Ms. Franecke's policy to allow TSRs to have only water bottles at our stations.

(Dkt. No. 73-1, ¶¶ 21–22).  Heritage defendants argue that paragraph 21 "contains a statement that lacks personal knowledge, is speculative, is conclusory, is self-serving, and contains hearsay" (Dkt. No.78, at 9).  Heritage defendants maintain that Mr. Yasevich "cannot testify to what others knew" and that his declaration contains "another hearsay statement attributed to an unidentified manager with no explanation of when the statement was made" (*Id.*).  Heritage defendants then turn to paragraph 22, which they claim to be hearsay because Heritage defendants maintain that the basis for Mr. Yasevich's knowledge of the "two specific policies that he attributes to Ms. Franecke . . . is based off what he alleges his managers told him" (*Id.*).  Heritage defendants call

this statement "hearsay from an unidentified individual or individuals and cannot be admissible" (*Id.*).

The Court overrules Heritage defendants' objections to paragraphs 21 and 22. Similar to the Court's understanding of paragraph 11, the Court does not read paragraph 21 to indicate that Mr. Yasevich proports to speak about what every former-Heritage employee knew (Dkt. No. 73-1, ¶ 21). Rather, the Court understands paragraph 21 to state that, based on Mr. Yasevich's personal experience and perception, it was common knowledge among Heritage staff that Ms. Franecke occupied some executive position at Heritage that allowed her to direct company policy. The Court overrules the hearsay objection to paragraph 21 and paragraph 22. *See* Fed. R. Evid. 801(d)(2)(D).

### 8.     Paragraph 23

Heritage defendants object to Mr. Yasevich's statement that he "saw Ms. Franecke twice in my last two years, both times of which she indicated that things at the company were fine," arguing that the statement is not relevant because it "does not provide any support to the claim that she had any control over hiring and firing Plaintiffs, supervising or controlling the Plaintiffs' work schedules or conditions of employment, whether she determined their rate of pay or method, or that she maintained the Plaintiffs' employment records" (Dkt. Nos. 73-1, ¶ 23; 78, at 10).

The Court overrules the relevance objection. In ruling on Heritage defendants' motion for partial summary judgment, the question before the Court is whether, based on the totality of the circumstances, a genuine factual dispute exists as to Ms. Franecke's status as an employer within the meaning of the FLSA. *Childress v. Ozark Delivery of Missouri, LLC*, 95 F.Supp.3d 1130, 1139 (W.D. Mo. 2015) (citing *Goldberg v. Whitaker*, 366 U.S. 28, 33, (1961)); *see also Roslov v. DirecTV Inc.*, 218 F.Supp.3d 965, 972 (E.D. Ark. 2016); *McClean v. Health Sys., Inc.*, Case No.

11-03037-CV-S-DGK, 2011 WL 2650272, at *2 (W.D. Mo. July 6, 2011); *Schubert v. Bethesda Health Group, Inc.*, 319 F.Supp.2d 963, 971 (E.D. Mo. 2004). The Court finds, on the record evidence before it, that Ms. Franecke's visits and statements related to the company's overall wellbeing are relevant considerations when examining the totality of the circumstances in this context.

### 9.   Paragraph 24

Heritage defendants object to Mr. Yasevich's representation made in paragraph 24. Mr. Yasevich states in paragraph 24 that he "did not meet [Ms. Franecke] at the company Christmas party, but in the last week we were open, she gave out cruise tickets across all 3 locations" (Dkt. Nos. 73-1, ¶ 24; 78, at 10). Heritage defendants claim this statement contradicts his prior representations related to bonuses and is not relevant to their motion for partial summary judgment. Mr. Yasevich, in his deposition testimony, makes the following references to trips and cruise tickets:

> Q      Did you ever receive, like, a free trip or some kind of incentive like that for meeting certain goals?
>
> A      No.
>
> . . .
>
> Q      Why are you making a claim under the WARN Act?
>
> A      Well, I have multiple reasons for that . . . . There's always somebody saying something, so we started hearing about some hack; somebody had some hack. And we were informed that—and they played it off that it was just some hack. That everything was taken care of.
>
> Q      What was hacked?
>
> A       Our system . . . . They said, know, even from the very top, Sandra[] [Franecke's] level and people who worked around her, the message was passed down to 15 our directors that everything was fine . . . . Then it comes to the week before the—they shut down, Christmas. So, that week they were handing out

cruises.  They were handing out cruises to our facility, to the other facilities, and giving away prize money for little Christmas celebration.

(Dkt. No. 66-2, 75–77).

At this time, the Court overrules Heritage's objections and finds that paragraph 24 is relevant and could be introduced in an admissible form at trial.[2]

### 10.    Paragraph 25

Heritage defendants call paragraph 25 of Mr. Yasevich's declaration "one last self-serving statement" (Dkt. No. 78, at 10).  Mr. Yasevich states the following in paragraph 25:

> 25.    Heritage employees frequently communicated with each other via a private Facebook page.  We communicated with each other, but also Heritage passed on important information to us from the executives via the page.  Ms. Francke was the administrator of the page and wrote most of the posts regarding Heritage policies and changes, as well as posting employee shout-outs and accolades.

(Dkt. No. 73-1, ¶ 25).  Heritage defendants assert that Mr. Yasevich "makes no reference to any specific post or policy change" and point out that "[h]e attaches no corroborating evidence such as a post to support this claim" (Dkt. No. 78, at 10).  Heritage defendants also maintain that Mr. Yasevich states that Ms. Francke "wrote 'most' of the [Facebook page] posts, but he does not say that she wrote them all" (*Id.*).  Heritage defendants argue that paragraph 25 "does not create a material question of fact that prevents summary judgment." (*Id.*).

At this time, and at this point in the litigation, the Court overrules Heritage defendants' objections and finds that paragraph 25 could be introduced in an admissible form at trial.

### B.    Declaration Of Pamela Cannon

#### 1.  Paragraphs 10, 11, 12, 15, 16, 17, 18, 20, 22, 25, And 26

---

[2]  Plaintiffs acknowledge in their response to Heritage defendants' motion for partial summary judgment that "the WARN Act does not apply to individual employers and concede dismissal of defendant Francke as to those claims" (Dkt. No. 73, at 1 n.1).  The Court will consider paragraph 24 as relevant evidence when analyzing Heritage defendants' motion for partial summary judgment on the remaining claims.

According to Heritage defendants, Ms. Cannon's statements in paragraphs 10, 11, 12, 15, 16, 17, 18, 20, 22, 25, and 26 of her declaration closely resemble or mirror Mr. Yasevich's representations made in paragraphs 10, 11, 12, 15, 16, 18, 19, 20, 21, 24, and 25 of his declaration (Dkt. No. 78, at 11–12).   Heritage defendants object to the Court considering Ms. Cannon's declarations in these paragraphs for the same reasons they objected to similar paragraphs in Mr. Yasevich's declaration (*Id.*).   The Court overrules Heritage defendants' objections to paragraphs 10, 11, 12, 17, 18, 20, 22, 25, and 26 of Ms. Cannon's declaration for the same reasons upon which the Court relied in ruling on Heritage defendants' objections to these numbered paragraphs in Mr. Yasevich's declaration.

Paragraphs 15 and 16 of Ms. Cannon's declaration mirror paragraphs 15 and 16 in Mr. Yasevich's declaration (*Compare* Dkt. No. 73-1, ¶¶ 15–16, *with* Dkt. No. 73-2, 15–16). Specifically, Ms. Cannon states in paragraphs15 and 16:

> 15.     While my managers in Jonesboro made decisions about where and when I worked, they did not set my pay nor sign my pay checks.  My wages were set by the executive office, who I assumed was Ms. Franecke.

> 16.     I assumed this because my managers were always referencing Ms. Franecke's approval and input in the decisions they made.  Also, even though my managers handed me my paychecks, Ms. Franecke signed them.  Also, even though my managers handed me my paychecks, Ms. Franecke signed them.

(Dkt. No. 73-2, ¶¶ 15–16).  The Court analyzed Heritage defendants' objections to the same statements in Mr. Yasevich's declaration; overruled the objections based on an alleged lack of personal knowledge, hearsay, and relevance; but sustained the objection because Mr. Yasevich's statements contradicted his previous deposition testimony.  The record before the Court does not indicate that Ms. Cannon has been deposed or that the representations made in paragraphs 15

through 16 of her declaration contradict any of her previous testimony.  Therefore, the Court overrules Heritage defendants' objections to these paragraphs in Ms. Cannon's declaration.

### 2.      Paragraph 19

Paragraph 19 of Ms. Cannon's declaration does not appear in Mr. Yasevich's declaration (*Compare* Dkt. No. 73-2; *with* Dkt. No. 73-1).  Ms. Cannon states in this paragraph:  "I remember that we were told that we wouldn't be paid for the extra time required to switch computers and that my managers specifically said it was being implemented because Ms. Franecke wanted it done that way" (Dkt. No. 73-2, ¶ 19).  Heritage defendants call this statement "self-serving," point out that it is "backed by no corroborating evidence," and characterize it as hearsay because it does not identify the managers who made the statement (Dkt. No. 78, at 11).  The Court overrules Heritage defendants' objections.  Fed. R. Evid. 801(d)(2)(D).

### 3.      Paragraph 21

"In Paragraph 21, Cannon states that her managers would sometimes arrange for competitions to see who could get the most money or calls, but the managers would have to get the rewards for winning approved by Ms. Franecke" (Dkt. No. 78, at 11–12; *see also* Dkt. No. 73-2, ¶ 21).  Heritage defendants object to paragraph 21 as a "self-serving statement with no corroborating evidence," claiming that Ms. Cannon would have no personal knowledge that the managers had to get approval from Ms. Franecke unless she was told that by someone else, therefore, this is hearsay" (Dkt. No. 78, at 11–12).  The Court overrules Heritage defendants' objections to paragraph 21.  Fed. R. Evid. 401, 402, 602, 701, 801(d)(2)(D).

### 4.      Paragraph 23

Paragraph 23 is offered as an illustration of paragraph 22 (Dkt. No. 73-2, ¶ 23).  The Court admitted previously paragraph 22 and admits paragraph 23 as well.  Fed. R. Evid. 801(d)(2)(D).

### 5.        Paragraph 24

Paragraph 24 states:  "I met Ms. Franecke a few times at the Jonesboro call center.  She would sometimes visit to check in or, on one notable occasion, to ask if anyone was willing to donate a kidney." (Dkt. No. 73-2, ¶ 24).   Heritage defendants object to the Court considering paragraph 24 of Ms. Cannon's declaration arguing that it "contains no factual information that would suggest Ms. Franecke should be considered an employer under the FLSA or AMWA" (Dkt. No. 78, at 12).  The Court understands this as an objection to relevance.

The Court overrules the objection.  The question before the Court is whether, based on the totality of the circumstances, a genuine factual dispute exists as to Ms. Franecke's status as an employer within the meaning of the FLSA.

### C.        Declaration Of Ronald Denney

#### 1.  Paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, And 20

Heritage defendants object to the Court considering paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, and 20 of Mr. Denny's declaration as these paragraphs closely resemble or mirror paragraphs 10, 12, 13, 14, 15, 16, 18, 19, 20, and 21 of Mr. Yasevich's declaration (Dkt. No. 78, at 13; *compare* Dkt. No. 73-3, ¶¶ 10–18, 20 *with* Dkt. No. 73-1, ¶¶ 10, 12–16, 18–21).

For the same reasons the Court overruled Heritage defendants' objections to paragraphs 10, 12, 18, 19, 20, and 21 of Mr. Yasevich's declaration, the Court overrules Heritage defendants' objections to paragraphs 10, 11, 16, 17, 18, and 20 of Mr. Denny's declaration (Dkt. 73-3, ¶¶ 10–11; 16–18).

Heritage did not object to the Court considering paragraphs 13 and 14 of Mr. Yasevich's testimony when deciding its motion partial for summary judgment (*See generally* Dkt. No. 78, at 5–10). Paragraphs of 13 and 14 of Mr. Yasevich's declaration state:

13.     When I was hired, I was under the impression that it was because I met certain pre-set criteria that allowed me to be hired on without executive approval. Had I not met these criteria, I either would have been denied a job or the HR person who hired me would have been required to get approval.

14.     I was given a pre-written employee handbook and was trained through pre-written course materials.  It was my understanding that I would have received this same handbook and training regardless of which call center I worked at, even though each call center had different managers.

(Dkt. No. 73-1, ¶¶ 13–14).  Mr. Denney mirrors these statements in paragraphs 12 and 13 of his declaration (Dkt. No. 73-3, ¶¶ 12–13).  To the extent Heritage defendants object to the above statements, or any statements which mirror or resemble closely these statements in any of the declarations, the Court overrules such objections.

Mr. Denney's representations in paragraphs 14 and 15 of his declaration are similar to those statements in paragraphs 15 and 16 of Mr. Yasevich's declaration (*Compare* Dkt. No. 73-3, ¶¶ 14–15 *with* 73-1, ¶¶ 15–16).  The Court sustained Heritage defendants' objections to paragraphs 15 and 16 of Mr. Yasevich's declaration because the Court determined that Mr. Yasevich's statements contradicted his previous deposition testimony.  The record before the Court does not indicate that Mr. Denney has been deposed or that the representations made in his declaration contradict any of his previous testimony.  Therefore, the Court overrules Heritage defendants' objections to Mr. Denney's testimony found at paragraphs 14 and 15.

### 2.     Paragraph 19

Paragraph 19 is offered as an illustration of Mr. Denney's declaration at paragraph 18. Paragraphs 18 and 19 state:

18.     My managers had been working for Heritage for a long time and were familiar enough with the policies and procedures of the company that they didn't have to get approval for everything, but there were still things that required executive approval.

> 19.    For example, any time they wanted to change our call script, our managers
> would have to get executive approval.

(Dkt. No. 73-3, ¶¶ 18–19).  The Court overrules Heritage defendants' objection to Mr. Denney's

testimony.

### D.    Declaration Of Chanell Williams

#### 1.    Paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, And 24

Heritage defendants object to the Court considering paragraphs 10, 11, 12, 13, 14, 15, 16,

17, 18, 20, 21, and 24 of Ms. Williams' declaration as these paragraphs closely resemble or mirror

paragraphs 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, and 25 in Mr. Yasevich's declaration (Dkt.

No. 78, at 12; *compare* Dkt. No. 73-4, ¶¶ 10–18, 20–21, 24, *with* Dkt. No. 73-1, ¶¶ 10–16, 18–21,

25).

The Court overrules Heritage defendants' objections to paragraphs 10, 11, 12, 13, 14, 15,

16, 17, 18, 20, 21, and 24 of Ms. William's declaration for the same reasons it overruled similar

objections to these paragraphs in the declarations of Mr. Yasevich, Ms. Cannon, and Mr. Denny.

#### 2.    Paragraph 19

Heritage defendants object to the following paragraph in Ms. Williams'

declaration:

> 19.    Specifically, I remember that if you didn't reach your total hours, your pay
> was reduced; this was a policy Ms. Francke implemented.  Ms. Francke also had
> a policy that if you didn't meet quota, you could be terminated.  My managers
> specifically said [the policy] was being implemented because Ms. Francke wanted
> it done that way.

(Dkt. Nos. 73-4, ¶ 19; 78 at 13–14).  Heritage defendants characterize paragraph 19 as "self-

serving, uncorroborated, and unreliable hearsay." (Dkt. No.78, at 14).  The Court overrules

Heritage defendants' objection to paragraph 19.   *See generally* Fed. R. Evid. 602, 701, 801(d)(2)(D).

### 3.      Paragraph 23

Heritage defendants object to paragraph 23 in Ms. Williams' declaration on the basis that it is irrelevant (Dkt. No. 78, at 14).  Paragraph 23 reads:

> 23.      I also met her at the company Christmas party where she personally gave away cruise tickets and other prizes.  She would do a lot of incentives, and I was shocked when I heard about the breach because she was continuously giving out cruises.

The Court overrules this objection.

### E.      Declaration Of Jennifer Long

### 1.      Objections Based On Previous Objections To Mr. Yasevich's Declaration

Heritage defendants make a general statement at the outset of their objections to plaintiff Jennifer Long's declaration, arguing that Ms. Long's declaration "does not contain admissible evidence" and that they object to Ms. Long's testimony for the same reasons they objected to Mr. Yasevich's testimony (Dkt. No. 78, at 15).  Heritage defendants make no reference to specific paragraphs in Ms. Long's declaration to which they object.  The Court overrules any of Heritage defendants' objections to Ms. Long's declaration to the extent those objections are similar objections based on the same rationale previously overruled by the Court.

### 2.      Paragraph 10

Ms. Long states in paragraph 10:

> 10.      Even though these managers ran the daily operation of the call centers, it was my understanding that their decisions were subject to existing policies and procedures set up by a higher-up executive.  Specifically, I assumed that the decisions were made according to the policies and procedures written by Ms. Franecke in her role as CEO.

(Dkt. No. 73-5, ¶ 10).  Heritage defendants argue that Ms. Long's assumption "that the decisions were made according to the policies and procedures written by Ms. Franecke . . . .  are inadmissible" (Dkt. No. 78, at 15).  The Court overrules this objection.

### 3.    Paragraph 18

Heritage defendants make a specific hearsay objection to paragraph 18 (Dkt. No. 73-5, ¶ 15).  Paragraph 18 is offered as an illustration of Ms. Long's declaration at paragraph 17.  Paragraphs 17 and 18 state:

> 17.    My managers had been working for Heritage for a long time and were familiar enough with the policies and procedures of the company that they didn't have to get approval for everything, but there were still things that required executive approval.
>
> 18.    For example, if my managers wanted to fire someone, they had to get approval from upper management prior to doing so.

(Dkt. No. 73-5, ¶¶ 17–18).  The Court overrules Heritage defendants' objection to Ms. Long's testimony at paragraph 18.  *See generally* Fed. R. Evid. 602, 701, 801(d)(2)(D).

### 4.    Paragraph 20

Heritage defendants object to relevancy of Paragraph 20.  Paragraph 20 states:

> 20.    I didn't meet Ms. Franecke until after the alleged data breach that shut Heritage down.  She was around the call center a lot toward the end when she was dealing with the hacking.

(Dkt. No. 73-5, ¶ 20).  The Court overrules this objection.

### F.    Declaration Of Katrina Grimes

#### 1.  Objections Based On Previous Objections To Mr. Yasevich's Declaration

Heritage defendants make a general statement at the outset of their objections to plaintiff Katrina Grimes' declaration, arguing that Ms. Grimes' declaration "does not contain admissible

evidence" and that they object to Ms. Grimes' testimony for the same reasons they objected to Mr.

Yasevich's testimony (Dkt. No. 78, at 15–16).  Heritage defendants make no reference to specific

paragraphs in Ms. Grimes' declaration to which they object.  The Court overrules any of Heritage

defendants' objections to Ms. Grimes' declaration to the extent those objection are similar

objections based on the same rationale previously overruled by the Court.

### 2.      Paragraph 18

Heritage defendants object to paragraph 18.  Paragraph 18 provides an example that

expound upon the statement made at paragraph 17.  Paragraphs 17 and 18 state:

> 17.     I know that Ms. Franecke was involved in company management because
> whenever my managers would have meetings with the executives, they always
> came back and implemented changes that they attributed to Ms. Franecke.

> 18.     Specifically, when I was demoted from my position in payroll, my managers
> specifically told me it was Ms. Franecke's decision to do away with the position.

(Dkt. No. 73-6, ¶¶ 17–18).  Heritage defendants state that "[t]his is a clear hearsay statement" (Dkt.

No. 78, at 16).  The Court overrules Heritage defendants' hearsay objection to paragraph 18.  *See*

*generally* Fed. R. Evid. 602, 701, 801(d)(2)(D).

### 3.      Paragraph 19

Ms. Grimes states the following in Paragraph 19:  "My managers had been working for

Heritage for a long time and were familiar enough with the policies and procedures of the company

that they didn't have to get approval for everything, but there were still things that required

executive approval." (Dkt. No. 73-6, ¶ 19).  Heritage defendants object to this statement, arguing

that it is self-serving and contradicts Mr. Yasevich's deposition (Dkt. No. 78, at 16).  The record

before the Court does not indicate that Ms. Grimes has been deposed or if the representations made

in paragraph 19 contradict previous testimony.  Given that there are no alleged contradictions in

Ms. Grimes' testimony for the Court to consider as they relate to paragraphs 19, the Court overrules the objections.

### 4.    Paragraph 22

Ms. Grimes states the following in Paragraph 22:  "I didn't meet Ms. Franecke until after the data breach that shut Heritage down.  She was around the call center a lot toward the end when she was dealing with the hacking" (Dkt. No. 73-6, ¶ 22).  Heritage defendants object to relevance (Dkt. No. 78, at 16).  The Court overrules this objection.

## IV.    Analysis

Heritage defendants move for partial summary judgment, arguing that the undisputed factual record before the Court demonstrates that Ms. Franecke does not meet the definition of an employer under the FLSA or AMWA.  Heritage defendants also argue that the WARN Act does not apply to Ms. Franecke (Dkt. No 68, at 2).  In their response, plaintiffs concede that "the WARN Act does not apply to individual employers," but they argue disputed facts exist as to Ms. Franecke's status as an employer within the meaning of the FLSA and AMWA (Dkt. No. 73, at 1, 1 n.1, 2, 5 n. 2).

### A.    FLSA Claims

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262 (8th Cir. 1963).  In determining whether an individual qualifies as an employer, courts "look to the economic realities of the circumstances rather than the technical common law concepts of agency."  *Childress*, 95 F.Supp.3d at 1139 (citing *Goldberg*, 366 U.S. at 33); *see also Roslov v.*, 218 F.Supp.3d at 972.  Courts within the Eighth Circuit consider the totality of the circumstances.  *Childress*, 95 F.Supp.3d at 1139.  The analysis typically starts with a review of

four factors:  (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled the plaintiffs' work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained the plaintiffs' employment records.  *Id.* (citing *McClean*,  2011 WL 2650272, at *2; *Schubert*,  319 F.Supp.2d at 971).  None of the four factors alone is dispositive.  *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 418 (3d Cir. 2012).

"The Eighth Circuit has held that a corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA."  *Simms v. Northport Health Servs. of Ark., LLC.*, Case No. 2:12-cv-02252, 2013 WL 2102974 (W.D. Ark. May 14, 2013) (citing *Wirtz*, 322 F.2d at 262–63)).  "The so-called 'active management test' provides that a corporate officer may be included in the definition of 'employer' if he hires the supervisors and home office workforce and if the wages of the corporation's employees are subject to his control, if only in varying degrees."  *Id.* (citing *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956)).  *Wirtz* and its progeny "require 'operational control of significant aspects of . . . day-to-day functions, including compensation of employees or other matters in relation to an employee'" with the "the overarching concern is whether the alleged employer possessed direct or indirect power to control significant aspects of the plaintiff's employment."  *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 388 (E.D. Mo. 2014) (quoting *Hembree v. Mid-Continent Transp., Inc.*, Case No. 09-6094-cv-SJ-HFS, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011)); *Childress*, 95 F. Supp. 3d at 1139; *see also Solis v. Hill Country Farms, Inc.,* 808 F. Supp. 2d 1105, 1115 (S.D. Iowa 2011), *aff'd*, 469 F. App'x 498 (8th Cir. 2012) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983), for the proposition that "the overwhelming weight of authority is

that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."). In short, a corporate officer must not only have the power to exercise operational control, he or she must exercise that power to be an employer within the meaning of the FLSA. *Solis*, 808 F. Supp. 2d at 1115. The Eighth Circuit noted in *Wirtz* that finding an individual to be an employer within the meaning of the FLSA would be "well supported" by showing "a combination of stock ownership, management, direction and the right to hire and fire employees." *Wirtz*, 322 F.2d at 263.

Here, the parties dispute the extent of Ms. Franecke's responsibilities regarding all four factors to be weighed when examining the totality of the circumstances (Dkt. Nos. 67, ¶¶ 3, 5, 7–8; 74, ¶¶ 3, 5, 7–8). The question before the Court at this stage of the litigation is whether, in examining the totality of the circumstances, the Court finds a genuine dispute of material fact related to Ms. Franecke's status as an employer within the meaning of the FLSA. Heritage defendants maintain that no genuine issue of material fact exists on the record before the Court (Dkt. No. 68, at 2). According to Heritage defendants, based on the totality of the circumstances, Ms. Franecke is not an employer within the meaning of the FLSA (Dkt. Nos. 66, at 1–2; 67; 68, at 2). Plaintiffs disagree, arguing that genuine issues of material fact exist regarding Ms. Franecke's status as an employer based on the totality of the circumstances (Dkt. Nos. 73, at 5–11; 74).

### 1.    Power To Hire And Fire

The parties dispute whether Ms. Franecke has the power to hire and fire (Dkt. Nos. 67, ¶ 3; 74, ¶ 3). Heritage defendants assert that Ms. Franecke had no direct control or duties associated with hiring and firing of plaintiffs, but plaintiffs argue that all hiring and firing was done pursuant to policies and criteria set by Ms. Franecke (*Id*.). Plaintiffs assert that Ms. Franecke set policies

29

providing grounds for termination for not meeting certain quotas and exercised control of employee positions such that she promoted and demoted through the creation and elimination of certain positions (*Id.*).  Plaintiffs allege multiple factual disputes regarding the extent of Ms. Franecke's control over the hiring and firing of former Heritage employees, including plaintiffs (Dkt. No. 74, ¶ 3).

At this stage of the litigation, after construing all inferences in the light most favorable to plaintiffs and looking to the economic realities of Heritage's organizational structure, the Court determines that there is a genuine issue of material fact in dispute as to Ms. Franecke's power to hire and fire plaintiffs.

### 2. Supervising And Controlling Employee's Work Schedules Or Conditions Of Employment

Although the parties agree that plaintiffs' work schedules and conditions of employment were handled by plaintiffs' managers, they dispute whether Ms. Franecke played a role supervising or controlling those work schedules or conditions of employment (Dkt. Nos. 67, ¶¶ 5–6; 74, ¶¶ 5–6).  Heritage defendants claim the undisputed factual record before the Court shows that Ms. Franecke did not supervise or control any of the plaintiffs' work schedules or conditions of employment (Dkt. No. 67, ¶¶ 5–6).  Plaintiffs counter, alleging that the record before the Court demonstrates key factual disputes, providing declaration testimony indicating that Ms. Franecke set policies which dictated plaintiffs' work schedules or conditions of employment (Dkt. No. 74, ¶¶ 5–6).  For example, plaintiffs claim that Ms. Franecke:  (1) set policies that affected plaintiffs' work schedules and conditions of employment, (2) was personally responsible for the policy that prevented plaintiffs from getting paid for their time spent in switching computers, and (3) exerted control over plaintiffs' schedules by implementing a policy that required site managers to obtain approval on any overtime hours requested by plaintiffs (*Id.*).

At this stage of the litigation, after construing all inferences in the light most favorable to the non-moving party, here plaintiffs, and looking to the economic realities of Heritage's organizational structure, the Court finds that plaintiffs have alleged that outcome determinative facts are in dispute regarding the extent of Ms. Franecke's role in supervising and controlling plaintiffs' work schedules or conditions of employment (Dkt. Nos. 67, ¶¶ 5–6; 74, ¶¶ 5–6).

### 3.      Determining Rate and Method of Payment

The parties dispute whether Ms. Franecke handled plaintiffs' rates of pay or their method of payment (Dkt. Nos. 67, ¶ 7; 74, ¶ 7).  At this stage of the litigation, after construing all inferences in the light most favorable to plaintiffs the non-moving party, and looking to the economic realities of Heritage's organizational structure, the Court finds that plaintiffs have alleged that outcome determinative facts are in dispute regarding the extent to which Ms. Franecke determined their rate and method of pay (Dkt. Nos. 67, ¶ 7; 74, ¶ 7).

### 4.      Maintaining Employment Records

The parties also dispute whether Ms. Franecke maintained plaintiffs' employment records. Plaintiffs allege Ms. Franecke maintained employment records, wrote protocols including the employee handbook, and signed plaintiffs' paychecks (Dkt. Nos. 67, ¶ 8; 74, ¶ 8).   Heritage defendants offer "evidence to the contrary" in their reply—the declaration of Anita Hill, a former Heritage employee "in charge of writing checks" (Dkt. Nos. 78, at 8; 78-1, ¶ 4).  Ms. Hill swears that "Sandra Franecke never signed payroll checks . . .  [and that] payroll checks that were issued would have been signed by Genda Kennihan or [Ms. Hill]" (Dkt. No. 78-1, ¶ 4).  The inclusion of Ms. Hill's declaration does little more than demonstrate that the parties dispute a genuine material fact relevant when determining Ms. Franecke's status as an employer within the meaning of the FLSA.

For the reasons discussed above, at this stage of the litigation, after construing all inferences in the light most favorable to plaintiffs the non-moving party, and looking to the economic realities of Heritage's organizational structure, the Court finds that plaintiffs have alleged that outcome determinative facts are in dispute regarding the extent of Ms. Franecke's role in maintaining employment records (Dkt. Nos. 67, ¶ 8; 74, ¶ 8).

### 5.      Conclusion As To FLSA Claims

The parties agree that Ms. Franecke is "a part owner of Heritage" (Dkt. No. 67, ¶ 1; 74, ¶ 1).  A part-owner who both has the power to exercise operational control over an employee and exercises that power is an employer within the meaning of the FLSA.  *Solis*, 808 F. Supp. 2d at 1115; *see also Wirtz*, 322 F.2d at 263.  Having examined the record in the light most favorable to plaintiffs the non-moving party, the Court finds that genuine factual disputes exist as to whether, based on the totality of the circumstances, Ms. Franecke exercised operational control in her role as part-owner of Heritage.  Therefore, the Court denies Heritage defendant's motion for partial summary judgment as it relates to plaintiffs' FLSA claims against Ms. Franecke.

### B.      AMWA Claims

Apart from the AMWA's more relaxed provisions related to coverage, "[t]he FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Carter v. Primary Home Care of Hot Springs, Inc.*, Case No. 6:14-cv-6092, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015).  The Court also finds that genuine factual disputes exist as to whether the totality of the circumstances demonstrate that Ms. Franecke is an employer within the meaning of the AMWA.  For this reason, the Court

denies Heritage defendant's motion for partial summary judgment as it relates to plaintiffs' AMWA claims against Ms. Franecke.

### C.   WARN Act Claims

Having considered the applicable law and the parties' agreement that the WARN Act does not apply to individuals, the Court, on the record before it, finds that there is no factual dispute that Ms. Franecke does not meet the definition of an employer within the meaning of the WARN Act (Dkt. Nos. 73, at 1 n.1; 78, at 17) 29 U.S.C. § 2101(a)(1) (defining an "employer" as a "business enterprise"); *Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1054 (D. Minn. 2021) (collecting cases and noting that "district courts have consistently held that direct [WARN Act] claims made against individuals, even owners, are not cognizable."). Accordingly, the Court grants in-part Heritage defendants' motion for partial summary judgment and dismisses plaintiffs' WARN Act claims against Ms. Franecke (Dkt. No. 66).

### V.   Conclusion

The Court denies Heritage defendants' motion to compel as moot (Dkt. No. 63). The Court grants in-part and denies in-part Heritage defendants' motion for partial summary judgment (Dkt. No. 66). The Court grants the motion and dismisses the WARN Act claims against Ms. Franecke, but the Court denies the motion with regard to plaintiffs' FSLA and AMWA claims.

It is so ordered this 1st day of September, 2023.

Kristine G. Baker
United States District Judge