IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| JOHNATHAN YASEVICH, et al., Each Individually and on Behalf of All Others Similarly Situated | PLAINTIFFS |

CASE NO. 3:20-cv-19-KGB

| | |
|---|---|
| THE HERITAGE COMPANY, INC., and SANDRA FRANECKE | DEFENDANTS |

**DEFENDANTS' PRE-TRIAL BRIEF**

COMES NOW Defendants The Heritage Company, Inc. and Sandra Franecke ("THC". "Franecke", and collectively "Defendants"), by and through their attorneys, the Davidson Law Firm, and for their Pre-Trial Brief state as follows:

**I. FACTUAL SUMMARY**

THC began approximately sixty (60) years ago in Arkansas. THC is a professional telephone fundraiser for non-profit charities. The Plaintiffs worked in the following areas: call centers performing marketing calls in order to raise funds for these charities; administrative areas of THC; or in invoicing, collecting, or design of marketing. There are two classifications of Plaintiffs, telemarketing sales representatives ("TSR") and non-TSR.

The TSR Plaintiffs sued for violations of Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"). THC and Franecke have raised an affirmative defense, the de minimis exemption. This exemption would render FLSA inapplicable to the Plaintiffs. TSR Plaintiffs also sued for violations of the Arkansas Minimum Wage Act. ("AMWA") Ark. Code Ann. §11-4-201 et. seq. where THC and Franecke have, again, raised an affirmative defense, the de minimis exemption.

This exemption would render AMWA inapplicable to the Plaintiffs. TSR and non-TSR Plaintiffs have sued for violations to the Worker Adjustment and Retraining Act 29 U.S.C. § 2101 et. seq. ("WARN"). THC and Franecke have raised an affirmative defense, the emergency exemption. This exemption would render WARN inapplicable to the Plaintiffs. TSR and non-TSR Plaintiffs have sued Franecke for personal liability of the funds they claim are owed. Franecke has raised an affirmative defense, that she was not in charge of the company and should not be considered to meet the definition of an employer, this would render Franecke not liable under any of Plaintiffs' claims.

    Plaintiffs claim that they were not paid for the time it took the callers to switch between programs that were used to know who to call for which campaign. Plaintiffs further claim that employees were not given advance notice of the company closing.

    Defendant THC was hit with a cyber-attack on October 15, 2019. This cyber-attack shut down their systems. Immediately a company was hired to handle the ransom communication. After the ransom was paid, the systems did not come back up and another company was hired to get the systems operating again and promised to do so within days. THC remained open and paid employees through this time leaving the company unsuccessful in its business affairs. Unfortunately, due to the cyber-attack, THC was forced to shut down based on the emergency imposed and therefore was not able to provide warning.

## II.  ARGUMENT

**A.  FLSA and AMWA.**

In recording working time under the Fair Labor Standards Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot, as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)

Employers are not required to pay employees for insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes. 29 C.F.R. § 785.47. That legal concept, known as the de minimis doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute. Courts consider the following factors when determining whether the work performed by the employee is de minimis: (1) the amount of time spent on the extra work, (2) the practical administrative difficulties of recording additional time, (3) the regularity with which the additional work is performed, and (4) the aggregate amount of compensable time. 29 C.F.R. § 785.47. Although the amount of daily time spent on the additional work is an important factor in determining whether a claim is de minimis, no precisely calculated, rigid durational period applies, but most courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable. *Id.*

TRS Plaintiffs claim that they were not paid for their time between switching programs of a couple to a few minutes per switch. By definition, this is de minimis time and is therefore insignificant and Defendants are not responsible for paying for this time.

Additionally, Plaintiffs' wage and hour claims against Defendant Franecke fail as she does not meet the definition of an employer under the FLSA and AMWA. The FLSA defines an employer as:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C.S. § 203 (d).

"The Eighth Circuit has held that a corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA." *Simms v. Northport Health Servs of Ark., LLC.*, 2:12-CV-02252, 2013 U.S. Dist. LEXIS 68302, 2013 WL 2102974 (W.D. Ark. May 14, 2013) (citing *Wirtz*, 322 F.2d at 262-63)). "The so-called 'active management test' provides that a corporate officer may be included in the definition of 'employer' if he hires the supervisors and home office workforce and if the wages of the corporation's employees are subject to his control, if only in varying degrees." *Id.* (citing *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956)). *Wirtz* and its progeny "require 'operational control of significant aspects of . . . day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 388 (E.D. Mo. 2014) (quoting *Hembree v. Mid-Continent Transp., Inc.*, 09-6094-CV-SJ-HFS, 2011 U.S. Dist. LEXIS 134162, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011)).

The Eighth Circuit has looked to "factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the 'employer.'" *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799, 802-03 (E.D. Ark. 1990) (citing *Wirtz v. Pure Ice Company*, 322 F.2d 259 (8th Cir. 1963); *Fruco Const.*

*Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951)). Consistent with the purpose of the four-factor test, no one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity. *Baker v. Stone Cnty., Mo.*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (citations omitted).

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d); *Wirtz*, 322 F.2d at 262. In determining whether an individual qualifies as an employer, courts "look to the economic realities of the circumstances rather than the technical common law concepts of agency." *Childress v. Ozark Delivery of Missouri, LLC*, 95 F.Supp.3d 1130, 1139 (W.D. Mo. 2015) (citing *Goldberg v. Whitaker*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)); *see also Roslov v. DirecTV Inc.*, 218 F.Supp.3d 965, 972 (E.D. Ark. 2016). Courts within the Eighth Circuit consider the totality of the circumstances. *Childress*, 95 F.Supp.3d at 1139. The analysis typically starts with a review of four factors: (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled the plaintiff's work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained the plaintiff's employment records. *Id.* (citing *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 U.S. Dist. LEXIS 72346, 2011 WL 2650272, at *2 (W.D. Mo. July 6, 2011); *Schubert v. Bethesda Health Group, Inc.*, 319 F.Supp.2d 963, 971 (E.D. Mo. 2004)). These factors are not exhaustive and no one factor is dispositive. *Hicks v. Lindsey Mgmt. Co.*, No. 3:18-cv-00133 KGB, 2019 U.S. Dist. LEXIS 221298, at *14-15 (E.D. Ark. Sep. 5, 2019). The undisputed facts show that none of the four factors are present here, nor any other facts that suggest Franecke should be classified as Plaintiffs' employer within the context of the FLSA.

The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner. *Carter v. Primary Home Care of Hot Springs, Inc.*, No. 6:14-CV-6092, 2015 U.S. Dist. LEXIS 181988, at *6 (W.D. Ark. May 14, 2015) (citing *Whitworth v. French Quarter Partners, LLC*, No. 13-cv-6003, 2014 U.S. Dist. LEXIS 190419 (W.D. Ark. June 30, 2014); *Lyons v. Conagra Foods Packaged Foods, LLC*, No. 4:12-cv-245, 2013 U.S. Dist. LEXIS 193882, *200 (E.D. Ark. Oct. 31, 2013); *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011)). The definition of an employer under the FSLA and the AMWA are parallels and should be interpreted in the same manner. The following language can be found in both definitions, "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.S. § 203 (d); Ark. Code Ann. § 11-4-203 (4)(A). Accordingly, the four-factor test applied in the FLSA context applies when determining if a Defendant meets the definition of an employer under the AMWA. For the same reasons that Ms. Franecke is not an employer under the FLSA, she is not an employer under the AMWA. Defendants have briefed this issue in their Motion for Partial Summary Judgment. (*Doc. 66*).

B. **WARN ACT**

29 U.S.C.A. § 2102(b)(2)(A) states that [a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required. Further, the WARN act doesn't apply if there are business circumstances that were not reasonably foreseeable at the time that notice would have been required. *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000 (2004), see also, 29 U.S.C.A. § 2102(b)(2)(A). One indication of a business circumstance not being foreseeable occurs when "the circumstance is caused by some

sudden, dramatic, and unexpected action or condition outside of the employer's control." *Id*. The test for this focuses on the employer's business judgment and requires the employer to exercise commercially reasonable business judgment as someone similarly situated would do. *Id*, *see also*, *Loeher v. McDonnel-Douglas Corp,*, 98 F.3d 1056 (8th Cir. 1996) and *Burnsides v. MJ Optical, Inc.* 128 F.3d 700 (1997).

     THC was attacked in a ransom cyber-attack at the end of 2019. Throughout the ransom period, THC was promised that in a couple of days, they would have their servers back up and running. After more than two (2) months, the servers were still not fully operational, and THC was forced to shut down. This constitutes a circumstance that was not reasonably foreseeable. During the time of the server issues, THC continued paying all salaries but brought in very little revenue for their charities and therefore brought in no profits for the company despite pouring out funds for the salaries. THC intended to stay in business relying on the information provided to it by those hired to combat the cyber-attack, however, THC's servers never became functional again and THC ultimately had to make a business judgment to shut down, one in which others similarly situated would have done.

     The employer must give as much notice as practicable and a brief statement of the basis for reducing the notification period. 29 U.S.C.A. § 2101(b)(3). Defendants held a meeting in which finances and the overall company were discussed. It was at this time that based on the cyber-attack and the impact it had on contracts with charities and money collected and therefore paid to THC, it was impractical to continue the operation of THC and it was forced to shut down. THC immediately sent out a notice from Franecke to all employees. Defendants meet both the reduction time to notify as well as the business judgment rule making them not liable under the WARN act.

sudden, dramatic, and unexpected action or condition outside of the employer's control." *Id*. The test for this focuses on the employer's business judgment and requires the employer to exercise commercially reasonable business judgment as someone similarly situated would do. *Id*, *see also*, *Loeher v. McDonnel-Douglas Corp,*, 98 F.3d 1056 (8th Cir. 1996) and *Burnsides v. MJ Optical, Inc.* 128 F.3d 700 (1997).

THC was attacked in a ransom cyber-attack at the end of 2019. Throughout the ransom period, THC was promised that in a couple of days, they would have their servers back up and running. After more than two (2) months, the servers were still not fully operational, and THC was forced to shut down. This constitutes a circumstance that was not reasonably foreseeable. During the time of the server issues, THC continued paying all salaries but brought in very little revenue for their charities and therefore brought in no profits for the company despite pouring out funds for the salaries. THC intended to stay in business relying on the information provided to it by those hired to combat the cyber-attack, however, THC's servers never became functional again and THC ultimately had to make a business judgment to shut down, one in which others similarly situated would have done.

The employer must give as much notice as practicable and a brief statement of the basis for reducing the notification period. 29 U.S.C.A. § 2101(b)(3). Defendants held a meeting in which finances and the overall company were discussed. It was at this time that based on the cyber-attack and the impact it had on contracts with charities and money collected and therefore paid to THC, it was impractical to continue the operation of THC and it was forced to shut down. THC immediately sent out a notice from Franecke to all employees. Defendants meet both the reduction time to notify as well as the business judgment rule making them not liable under the WARN act.

## CONCLUSION

In conclusion, Defendants have met the exceptions to the FLSA, AMWA, and WARN Act, and Plaintiffs' claims should fail.

Respectfully submitted,

Charles Darwin "Skip" Davidson; ABN 73026
Nickolas W. Dunn; ABN 2019115

**DAVIDSON LAW FIRM**
724 Garland, Cantrell at State
P.O. Box 1300
Little Rock, AR 72201
(501) 320-5132
Fax: (501) 374-5917
E-mail: skipd@dlf-ar.com
         nick.dunn@dlf-ar.com

**Attorneys for The Heritage Company, Inc. and Sandra Franecke**

## CERTIFICATE OF SERVICE

I, Nickolas W. Dunn, do hereby certify that I have sent via Federal Court ECF System this 20th day of November 2023, a true and complete copy of the forgoing to the following individuals:

**Sean Short**
**Josh Sanford**
Sanford Law Firm
650 S. Shackleford, Suite 411
Little Rock, Arkansas 72211

Nickolas W. Dunn
